WYNDHAM VACATION
RESORTS, INC.,

        Plaintiff,

VS.

    Case No. _____

THE CONSULTING GROUP, INC.,
SUPERIOR VACATIONS, INC.,
SUPERIOR TIMESHARE CLOSING,
RAY SPIGNER, MICHAEL DEAN
SPIGNER, CHARLES SIMERKA,
JUDITH McGINTY, and
JOHN AND JANE DOES 1 – 10,

    <u>JURY DEMAND</u>

        Defendants.

## COMPLAINT FOR DAMAGES

Comes now the Plaintiff, Wyndham Vacation Resorts, Inc., ("Wyndham") and files this Complaint for Damages against Defendants, The Consulting Group, Inc., Superior Timeshare Closing, Superior Vacations, Inc., Ray Spigner, Michael "Dean" Spigner, Charles Simerka, Judith McGinty and John and Jane Does 1 – 10, and for its cause of action against these Defendants would state as follows:

### NATURE OF CASE

(1)   This cause of action is predicated upon theories of Civil RICO, Intentional Interference with Business Relations, Breach of Contract, Procurement of Breach of Contract, Intentional Interference with Contractual Relations, Breach of Duty and/or Continuing Duty of

Loyalty, Civil Conspiracy, and violations of the Tennessee Consumer Protections Act and the Tennessee Uniform Trade Secrets Act.

(2)   The Defendants are associated for the common purpose of engaging in a course of deceptive, illegal and/or fraudulent conduct designed to transfer and to sell timeshare contracts. Defendants target Wyndham owners through illegal and deceptive practices including "bait and switch" tactics.  Defendants "bait" Wyndham owners with the impression that Defendants are associated with Wyndham and can reduce or eliminate maintenance fees under the owners' Wyndham contracts.  Wyndham owners are then persuaded to attend a seminar that does not focus on reducing fees under Wyndham contracts.  Defendants instead conduct the "switch" consisting of a high pressure, deceptive presentation designed to fleece Wyndham timeshare owners.  Defendants convince Wyndham owners that their contracts have no value and induce them to pay Defendants to assume title of their existing timeshare contracts.  Wyndham owners believe they are transferring title to Superior Timeshare Closing, but Superior Timeshare Closing does not take or assume title.  Defendants then charge Wyndham owners thousands of additional dollars to purchase new timeshare contracts from Defendants.  These newly purchased timeshare contracts are to replace those Wyndham contracts that Wyndham owners paid Defendants to assume.  This entire process is based on deceptive practices and misrepresentations.

(3)   Defendants target timeshare owners in all States.  Defendants have specifically targeted and met with guests at Wyndham Fairfield Glade in Tennessee.  Defendants have also been operating a booth in the lobby of Wyndham Plantation in Villa Rica, Georgia.  Wyndham Plantation is a facility formerly managed by Wyndham, but is now under independent management.  Wyndham Plantation, however, is still utilized by Wyndham timeshare owners. Defendants have set up the "marketing booth" in the lobby of Wyndham Plantation for the

2

purpose of targeting Wyndham timeshare owners and providing them with the false impression that Defendants are affiliated with Wyndham. The logistics and dynamics of this set up place Wyndham owners in a more vulnerable position to fall victim to Defendants' scheme

(4) Dean Spigner, Judith McGinty and Charles Simerka are former supervisor[s] and/or salesperson[s] at Wyndham. All three individuals had access to confidential and proprietary information through their employment with Wyndham. Defendants utilize this information to the detriment of Wyndham and in violation of the Salesperson Agreements signed by Dean Spigner, Judith McGinty, and Charles Simerka. Defendants have utilized both current and former Wyndham employees to gain access to confidential information for the purpose of contacting and prospecting Wyndham owners. Defendants have also utilized both current and former Wyndham employees to meet with Wyndham owners for the purpose of soliciting business for Defendants and to induce Wyndham owners to transfer or breach their Wyndham contracts. Defendants utilize Wyndham employees and Wyndham's confidential and proprietary information for purposes of unfair competition and to intentionally and tortuously interfere with Wyndham's business and contractual rights.

## PARTIES

(5) Wyndham is a Delaware corporation with a principal place of business located at 8427 South Park Circle, Orlando, Florida 32819.

(6) The Consulting Group, Inc., is held out to be a corporation by Ray and/or Dean Spigner. The Consulting Group is not incorporated under the laws of Georgia, Tennessee, Florida or Delaware. Upon information and belief, The Consulting Group is not incorporated in any state and, therefore, has a principal place of business in Tennessee, at the address of Ray

3

Spigner. Ray Spigner holds himself out as CEO of the Consulting Group and he can be served at 164 Brokenwood Lane, Crossville, Tennessee, 38558.

(7)  Superior Vacations, Inc., is a Tennessee Corporation with principal place of business in Sevierville, Tennessee.  The corporation's agent for service of process is Christal Franklin at 2957 Ridgecrest Trail, Sevierville, Tennessee 37862-7526.

(8)  Superior Timeshare Closing is a Tennessee Company with a principal place of business in Sevierville, Tennessee.  Superior Timeshare Closing's agent for service of process is Daniel Garrett or Christal Franklin and either can be served with process at 227 Court Avenue, Sevierville, Tennessee 37862.

(9)  Ray Spigner is a resident of Crossville, Tennessee, and can be served with process at 164 Brokenwood Lane, Crossville, Tennessee, 38558.

(10)  Michael Dean Spigner is a resident of Crossville, Tennessee, and can be served with process at 146 Motthaven Drive, Crossville, Tennessee 38558.

(11)  Charles Simerka is a resident of Hendersonville, Tennessee, and he can be served with process at 5318 Southfork Blvd., Old Hickory, Tennessee 37138.

(12)  Judith McGinty is a resident of Crossville, Tennessee, and can be served with process at 3893 Deep Draw Road, Crossville, Tennessee 38555.

(13)  John and Jane Does 1 – 10 are employees and/or independent contractors of Defendants whose names are unknown at this time and may be operating and/or doing business under an alias.

**JURISDICTION**

(14)  This cause of action is within the jurisdiction of the Federal District Court pursuant to the provisions of 28 U.S.C. § 1332(a) in that:

4

(a)  Wyndham and Defendants are citizens of different states; and

(b)   The amount in controversy exceeded $75,000.00, exclusive of interests and costs.

(15)  Jurisdiction is further predicated upon original jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.  Jurisdiction is conferred under 28 U.S.C. § 1331 by virtue of 18 U.S.C. §§ 1961 –1968 & 901(a).

## VENUE

(16)  Venue is proper in this district pursuant to 28 U.S.C. §1391(a) in that a substantial part of the alleged events giving rise to the original claim occurred and continue to occur in this district, the Middle District of Tennessee.  Defendants conduct business in this district and/or reside in this district.

## FACTUAL BACKGROUND

(17)   Wyndham develops, markets, sells and manages vacation timeshare ownership interests and provides consumer financing to owners.

(18)   Wyndham timeshares provide an alternative for individuals wanting a vacation home, but who cannot afford or justify the expense of buying additional fixed real estate and want the flexibility of traveling to many different vacation destinations.

(19)  Wyndham is an innovator in the timeshare industry.  Wyndham was one of the first companies to utilize a points-based ownership system providing owners with the flexibility to select personalized vacation criteria such as timing, duration, location and accommodation options.

(20)  Wyndham timeshare owners benefit from Wyndham's size, structure and product innovations.  Wyndham is the world's largest vacation timeshare company with approximately

5

1,000,000 owner families worldwide and an extensive and diverse portfolio of resorts. Wyndham provides access to the largest number of vacation ownership resorts and individual vacation ownership units.

(21)    Wyndham offers many intrinsic values to its clientele.  Wyndham offers its owners the opportunity to vacation at thousands of resorts worldwide through its international exchange affiliations.

(22)    Wyndham is supported by approximately 13,300 employees globally.  Wyndham has developed or acquired more than 180 vacation ownership resorts throughout the United States, Canada, Mexico, the Caribbean, and the South Pacific representing more than 20,500 individual vacation ownership units.

(23)    Wyndham Owners purchase timeshare properties or interests through Wyndham and enter into contracts with Wyndham.  These individuals or families can then participate in a points system and/or other innovative programs allowing them the benefits of timeshare ownership combined with the ability to travel to numerous resorts and destinations throughout the world.

(24)    Wyndham focuses on and emphasizes customer relations.  Maintaining good will and good customer relations are vital components to Wyndham's success in the industry and overall business success.

(25)    A large percentage of Wyndham's business is repeat business from existing timeshare owners, including Wyndham owners purchasing additional points and/or upgrades and Wyndham owners referring new buyers.

(26)    Wyndham focuses significant time and resources on developing and maintaining its owner base and Wyndham emphasizes owner relations and customer service.

6

(27)  Wyndham owners own real property at Wyndham timeshare locations.  Wyndham Owners have deeds that are filed as part of the services provided by Wyndham.

(28)  Wyndham provides maintenance, upkeep, and other services to Wyndham owners. In exchange, Wyndham owners have contractual obligations to pay yearly maintenance fees. These fees cover a wide array of services provided by Wyndham, various management companies, and applicable owners' associations.

(29)  Wyndham has significant measures in place to ensure the integrity of both the Wyndham sales staff and the practices of Wyndham employees.

(30)  Wyndham utilizes third-party "secret shoppers" to take tours and "shop" Wyndham salespersons.

(31)  Wyndham's secret shoppers' program has been implemented to ensure that Wyndham salespersons are not utilizing prohibited practices and to foster compliance with Wyndham's policies, protocols, and rules governing the conduct of Wyndham employees.

(32)  Dean Spigner was shopped by secret shoppers while he was employed at Wyndham as a salesperson.

(33)  Charles Simerka was shopped by secret shoppers while he was employed at Wyndham as a salesperson.

(34)  Wyndham has expended substantial time, effort, and money to research and develop innovative ideas, proprietary methods, proprietary techniques, and proprietary processes.  This Wyndham information is confidential and proprietary.  Under applicable Tennessee law, this information is trade secret.  Wyndham makes reasonable efforts to safeguard and to maintain the confidential and proprietary nature of this information.

7

(35)   Wyndham expends considerable time, effort, money, and resources to track statistics and create customer metrics, industry metrics, and economic metrics related to: consumer purchasing habits within the industry; the needs of particular groups, individuals, or prospects; the needs of particular clients; price points; and the development of confidential customer lists.   This information enhances Wyndham's marketing methodology, fosters development of innovative ideas, facilitates the creation of new customer relationships, and the information is utilized to better serve existing customers.   This Wyndham information is confidential, proprietary and under Tennessee law is considered to be trade secrets.   Wyndham makes reasonable efforts to safeguard and to maintain the confidential and proprietary nature of this information.

(36)   Wyndham expends considerable time, resources, and effort to generate and protect owner lists, owner contact information, and employee information.   This information is confidential and proprietary and, if known or used by competitors, would provide competitors with competitive benefits and an unfair advantage.   Wyndham makes reasonable efforts to safeguard and to maintain the confidential and proprietary nature of this information.

(37)   Wyndham derives significant economic value from its confidential and proprietary information by gaining a competitive advantage on its competitors and remaining an innovator within the industry.

(38)   Dean Spigner was employed at Wyndham for more than ten years.   He served as a high level supervisor, Vice President of Sales, and had access to proprietary and confidential information.   The confidential and proprietary information he had access to as a supervisor is protected and not generally accessible even to other employees or sales staff.   The use of this

8

confidential and proprietary information by competitors would constitute a competitive benefit and unfair competition and would be detrimental to Wyndham.

(39) Charles Simerka was employed at Wyndham for approximately ten years. He had access to proprietary and confidential information. The use of this confidential and proprietary information by competitors would constitute a competitive benefit and unfair competition and would be detrimental to Wyndham.

(40) Judith McGinty was employed at Wyndham. She had access to proprietary and confidential information the use of which, by competitors and/or Defendants, would constitute a competitive benefit and unfair competition and would be detrimental to Wyndham.

(41) Wyndham's confidential and proprietary information is neither available to nor made known to the general public. Wyndham does not publish or sell Wyndham confidential and proprietary information. Wyndham takes reasonable steps to safeguard and to protect its proprietary and confidential information from being made known to its competitors.

(42) Wyndham derives independent economic value from its confidential and proprietary information by virtue of the information not being known by or readily ascertainable to the general public and/or competition.

(43) Wyndham takes measures to protect and safeguard the confidentiality of its proprietary and confidential information. These steps include, but are not limited to, permitting only certain employees to have access to the information, limiting the number of employees of have access to the information, computer security measures, execution of confidentiality agreements and specific rules limiting and prohibiting the dissemination and/or unauthorized use of the information.

9

(44)   Wyndham's confidential and proprietary information is the result of years of cumulated industry experience, research, business dealings, and analysis and this information cannot be easily duplicated.

(45)   Employees selected by Wyndham to receive access to confidential and proprietary information are obligated, either under contract or by virtue of their fiduciary duty to Wyndham or an affiliate, to maintain the confidentiality of this information, protect the confidentiality of this information and to not use this information in a manner that is not specifically authorized and/or is detrimental to Wyndham's business.

### Dean Spigner

(46)   Dean Spigner was employed at Wyndham for in excess of ten years as a salesperson and/or supervisor.  He was assigned to various Wyndham Resorts including Fairfield Glade in Tennessee, Lake Tahoe, Nevada, and Wyndham Plantation at Villa Rica, Georgia.

(47)   Dean Spigner executed Salesperson Agreements on or about May 16, 2000, January 23, 2003, March 23, 2004, April 1, 2007, and most recently, August 29, 2011.  See (Attached, Exhibit # 1).

(48)   Dean Spigner's employment with Wyndham terminated on June 3, 2012.

(49)   Dean Spigner, as both a sales person and a supervisor, had access to and gained knowledge of Wyndham's confidential and proprietary information.   Such access and understanding included access to confidential customer lists and confidential customer information.   He had access to financial records, employee information and other confidential and proprietary information that under applicable law constitutes trade secret information.

(50)   Dean Spigner developed knowledge of confidential information during his employment at Wyndham regarding tactics and methods he could utilize unfairly for purposes of

10

financial gain and to the detriment of Wyndham. These tactics and methods constitute unfair competition, interference with Wyndham business interests and provide Defendants with substantial profit on an ongoing basis.

(51) Wyndham is harmed by Defendants' methods and tactics. Defendants are unjustly enriched by these methods and tactics predicated upon Dean Spigner's and other's use of confidential and proprietary information.

(52) Dean Spigner developed and/or cultivated relationships with Wyndham's timeshare owners while employed at Wyndham.

(53) Dean Spigner's contract/Salesperson Agreement prohibits him from having contact with Wyndham customers until June 2, 2013, or for one year from his last day of employment with Wyndham.

(54) Dean Spigner's interaction with and service to his Wyndham clients/owners, while employed at Wyndham, was a vital aspect in furthering the business interests, goodwill and reputation of Wyndham.

(55) While employed at Wyndham, Dean Spigner was under an obligation to deal with Wyndham customers in an honest and forthright manner. He was under an obligation to not misrepresent Wyndham's services or products. He was expected to conduct himself in a manner that was neither deceptive nor misleading to Wyndham customers. He was under an obligation to report and/or correct (while a supervisor) conduct of another employee that was dishonest, deceptive or misleading. He otherwise owed a duty of loyalty to Wyndham.

11

(56) Dean Spigner and his father, Ray Spigner, operated a company known as or referred to as Points 101. Points 101 commenced operation in 2008. Points 101 was in operation between 2008 and 2012. Points 101 was/is a business focused on the timeshare industry.

(57) Dean Spigner and Ray Spigner also operated a company known as Spigner Productions at some point in time between 2008 and 2012. Spigner Productions is a business related to the timeshare industry.

(58) Dean Spigner agreed to abide by the Business Principles of Wyndham Worldwide Corporation. See (Attached, Exhibit # 2).

(59) The Business Principles were applicable to Dean Spigner and apply to all employees of any and all subsidiaries and affiliates of Wyndham Worldwide, Corporation. See (Attached, Exhibit # 2).

(60) The Business Principles required Dean Spigner take precautions to protect against the unlawful and/or inappropriate use of or disclosure of Wyndham's confidential and proprietary information during his employment. See (Attached, Exhibit # 2).

(61) The Business Principles required Dean Spigner take precautions to protect against the unlawful and/or inappropriate use of or disclosure of Wyndham's confidential and proprietary information after his employment with Wyndham. See (Attached, Exhibit # 2).

(62) The description of confidential information contained in the Business Principles applicable to Dean Spigner includes the following: client lists (including phone numbers and postal and email addresses) and/or client or customer contact information; marketing and pricing plans; cost structures or strategies; and compilations which contain or otherwise reflect business information.

12

(63) Dean Spigner was and is currently bound by the terms and conditions contained in the Salesperson Agreement he executed on August 29, 2011. See (Attached, Exhibit # 1).

(64) The Salesperson Agreement placed contractual restrictions on Dean Spigner's use of Wyndham's confidential and proprietary data and information. See (Attached, Exhibit # 1).

(65) The Salesperson Agreement continues to place contractual restrictions on Dean Spigner's use of confidential and proprietary data and information. See (Attached, Exhibit # 1).

(66) The Salesperson Agreement includes covenants not to solicit Wyndham employees, Wyndham clients, Wyndham owners, and/or Wyndham prospects. See (Attached, Exhibit # 1).

(67) The Salesperson Agreement prohibits Dean Spigner's use of Wyndham's goods or services providers for the timeframe covered in the agreement. See (Attached, Exhibit # 1).

(68) Dean Spigner agreed that he would "devote his entire employment time and attention to the business of [Wyndham]" while employed at Wyndham. See (Attached, Exhibit # 1).

(69) The Salesperson Agreement mandated that Dean Spigner "shall report to his supervisor outside employment or business activity, whether or not such activity is pursued for gain, profit or other consideration, and shall not, without the express written approval of [Wyndham], engage in any such outside business activity reasonably related [Wyndham]'s actual or potential business activities." See (Attached, Exhibit # 1).

(70) Dean Spigner did not report his employment with, activities with and/or compensation from Points 101 to Wyndham or his Wyndham supervisor. Dean Spigner's failure to report these activities constituted a violation of his Salesperson Agreement.

13

(71)   Dean Spigner did not report his employment with, activities with and/or compensation from Spigner Productions to Wyndham or his Wyndham supervisor. Dean Spigner's failure to report these activities constituted a violation of the Salesperson Agreement.

(72)   Dean Spigner did not report his employment with, activities with and/or compensation from The Consulting Group, Inc., to Wyndham or his Wyndham supervisor. Dean Spigner's failure to report these activities constituted a violation of his Salesperson Agreement.

(73)   Dean Spigner received financial benefits and gains at Points 101 and/or at Spigner Productions while working for Wyndham.

(74)   Dean Spigner engaged in conduct at Points 101 and/or Spigner Productions which was designed to, and which did, interfere with Wyndham's contractual and business relations with Wyndham time share owners.

(75)   Dean Spigner received financial benefits and compensation from The Consulting Group, Inc., while working at Wyndham.

(76)   Dean Spigner engaged in conduct at The Consulting Group, Inc., which was designed to, and which did, interfere with Wyndham's contractual and business relations with Wyndham time share owners

(77)   Dean Spigner attempted to and/or made financial benefits and gain between 2008 and June 3, 2012, by interfering with Wyndham contractual and business relations, including by advising Wyndham time share owners how to circumvent their contractual obligations or rescind their Wyndham time share contracts.

## The Consulting Group, Inc.

(78)   Dean Spigner is currently working for The Consulting Group, Inc.

(79)   Dean Spigner is an owner, officer and/or partner in The Consulting Group, Inc.

14

(80)  The Consulting Group, Inc., targets both Wyndham and non-Wyndham Timeshare owners as potential clients and/or customers.

(81)  The Consulting Group, Inc., is a business focusing on the timeshare industry.  The corporation essentially has two revenue streams.  The corporation assists timeshare owners in transferring contracts or getting out of their timeshare contractual obligations.  The Consulting Group, Inc., also markets and/or sells timeshare contracts.  These contracts are sold through a service known as Plantation Resort Destinations.

(82)  The Consulting Group, Inc., operates a booth or table in the lobby of Wyndham Plantation in Villa Rica, Georgia.  Wyndham Plantation caters to Wyndham timeshare owners, but is now under different management.

(83)  The Defendants' Wyndham Plantation table is manned, operated, and/or worked by various agents, employees, and/or independent contractors of The Consulting Group, Inc.  For instance, Karen Roque manned, operated, and/or worked this table in June of 2012.  The table has also been manned, operated, and/or worked by Ray Spigner.  Dean Spigner has manned, operated, and/or worked this table.  Charles Simerka has been assigned to work this table.  Judith McGinty has been assigned to work this table.  Kasey Hardegree has been assigned to work this table.

(84)  Defendants have utilized a Wyndham banner in front of the booth/table at Wyndham Plantation in Villa Rica, Georgia.  Through the use of this banner and other conduct Defendants provide individuals with the impression that Defendants are employees of, or at a minimum associated with Wyndham.

15

(85)   Defendants utilize deceptive practices including a "bait and switch" sales tactic. Defendants ask Wyndham timeshare owners if they would be interested in reducing or eliminating maintenance fees under their Wyndham contract.

(86)   Wyndham owners interested in reducing their Wyndham fees are encouraged to attend a seminar or power point presentation.  Wyndham owners believe this seminar is being presented by Wyndham as an educational tool.

(87)   Defendants' presentation does not focus on reducing fees under Wyndham contracts.  Instead, the presentation is a high pressure and deceptive sales pitch designed to encourage Wyndham owners to transfer their Wyndham contracts and purchase Defendants' timeshare contract.  This is the "switch" portion of the Defendants' tactics.

(88)   Defendants induce Wyndham owners to transfer their Wyndham contracts through a series of deceptive and fraudulent misrepresentations taking place during the power point presentation.  These representations are made in person by the presenter and by Dean Spigner via telephone when he is needed to answer questions or "close a deal."

(89)   Defendants' deceptive and misleading tactics induce Wyndham owners to pay Defendants to assume their Wyndham timeshare contracts and/or take title to Wyndham properties.  Wyndham owners believe they are transferring title to their property to Superior Timeshare Closing.  Superior Timeshare Closing, however, does not take or assume title.

(90)   Defendants then induce Wyndham owners to pay Defendants thousands of additional dollars to purchase Defendants' timeshare contract to replace the Wyndham timeshare contract they believe they just paid Defendants to assume.

(91)   Defendants' use of the telephone during the power point presentation/seminar to allow Dean Spigner or Ray Spigner to fraudulently induce and/or pressure Wyndham owners

16

into purchasing Defendants' services constitute wire fraud. Acts of wire fraud occurred on or about June 15, 2012, have been occurring on an ongoing basis and are likely to continue to occur in the future.

(92) Dean Spigner and/or Ray Spigner made fraudulent misrepresentations via the telephone concerning Defendants' services and laws governing rescission of contracts during the last week of June 2012. This is a predicate act in furtherance of the Civil RICO scheme or conspiracy.

(93) Defendants utilized the U.S. Mail in July of 2012 in furtherance of the fraudulent scheme and utilize the U.S. Mail, Fed Ex, and/or UPS to transmit documents, deeds, and/or titles to complete transactions.

(94) Defendants have targeted multiple Wyndham owners in both Tennessee and in Georgia.

(95) Defendants have utilized both current and former employee[s] of Wyndham to access confidential information and target Wyndham owners.

(96) Causes of action against The Consulting Group, Inc., are predicated upon theories under 18 U.S.C. §§1962(c) & 1962(d) and will be addressed below in greater detail.

**Superior Timeshare Closings/Superior Vacations**

(97) Defendants utilize Superior Timeshare Closing and/or Superior Vacations to allegedly assume timeshare loans and/or property titles. Superior Timeshare Closing, however, does not assume titles. Timeshare owners are fraudulently advised that a transfer of title takes up to 180 days and timeshare owners continue to be assessed fees during this timeframe. The 180 days apparently provides Defendants with a window of opportunity within which to list and sell the Wyndham timeshare contract to a third-party.

17

(98)  Upon information and belief, the original owners continue to be assessed fees and title never changes hands if a third-party purchaser is not procured during that 180 day timeframe.  Defendants may also attempt to transfer Wyndham timeshare contracts into sham LLCs that are judgment proof in an effort to defraud creditors such as Wyndham and to avoid obligation under the Wyndham timeshare contracts.  Fraudulent conveyances are void/voidable and would not operate to relieve the Wyndham owner of their contractual liability.

(99)  The use of Superior Timeshare Closing is an integral part of the meticulously constructed association-in-fact enterprise.

(100)  Causes of action against Superior Time Share Closing and Superior Vacations are predicated upon theories under 18 U.S.C. §§1962(c) & 1962(d) and will be addressed below in greater detail.

**Ray Spigner**

(101)  Ray Spigner is a former Vice President of sales and marketing at Fairfield Glade, now operated by Wyndham.

(102)  Ray Spigner holds himself out as the CEO of The Consulting Group, Inc.

(103)   Ray Spigner and his son, Dean Spigner, have operated various timeshare companies since at least 2008.  These companies include Points 101 and Spigner Productions.

(104)   Ray Spigner has utilized and currently utilizes Dean Spigner's knowledge of confidential and proprietary Wyndham information.

(105)  Ray Spigner utilizes Dean Spigner's knowledge of confidential and proprietary Wyndham information to gain a competitive benefit, an unfair business advantage and to receive unjust enrichment to the determinant of Wyndham when prospecting Wyndham timeshare owners.

18

(106) Ray Spigner and/or Dean Spigner play a critical role in the hierarchy of the association-in-fact enterprise. Ray and/or Dean Spigner have meticulously organized the structure of the enterprise to include several businesses and individuals with access to Wyndham confidential information. This structure/organization is necessary to accomplish Defendants' scheme.

(107) Causes of action against Ray Spigner are predicated upon theories under 18 U.S.C. §§1962(c) & 1962(d) and will be addressed below in greater detail.

**Charles Simerka**

(108) Charles Simerka was employed at Wyndham as a Salesperson from approximately 2000 until August 9, 2011.

(109) Charles Simerka had access to and gained knowledge of Wyndham's confidential and proprietary information related to Wyndham's business while working at Wyndham. This confidential and proprietary information included, but was not limited to, the following: owner lists, owner contact information and financial data, marketing and sales methods, strategies, and Wyndham confidential policies and practices.

(110) Charles Simerka developed and/or cultivated relationships with Wyndham's timeshare owners while working for Wyndham. Since leaving Wyndham, Charles Simerka has utilized his relationships with Wyndham customers and confidential information acquired at Wyndham for financial gain to the determinant of Wyndham.

(111) Charles Simerka, agreed to abide by the Business Principles of Wyndham. The Business Principles mandated that he take precautions to protect against the unlawful and inappropriate use of or disclosure of Wyndham's confidential and proprietary information during his employment. See (Attached, Exhibit # 3).

19

(112)   The Business Principles required Charles Simerka take precautions to protect against the unlawful and inappropriate use of or disclosure of Wyndham's confidential and proprietary information after his employment terminated with Wyndham.  <u>See</u> (Attached, Exhibit # 3).

(113)  Charles Simerka executed Salesperson Agreements on or about November 1, 2000, February 19, 2003, and April 30, 2007.  <u>See</u> (Attached, Exhibit # 4).

(114)  The Salesperson Agreements placed contractual restrictions on Charles Simerka's use of Wyndham's confidential and proprietary data and information.  <u>See</u> (Attached, Exhibit # 4).

(115)   The Salesperson Agreement included covenants not to solicit Wyndham employees, clients, owners, prospects, or Wyndham's goods or services providers.   <u>See</u> (Attached, Exhibit # 4).

(116)  Charles Simerka worked for the Spigners and/or The Consulting Group, Inc.  He attempted to and/or profited by contacting Wyndham owners and marketing Defendants' services to the determinant of Wyndham.

(117)  Causes of action against Charles Simerka are predicated upon theories under 18 U.S.C. §§1962(c) & 1962(d), Breach of Contract and Breach of Loyalty.  These will be addressed below in greater detail.

**Judith McGinty**

(118)  Judith McGinty was employed at Wyndham as a Sales Representative at Fairfield Glade, in Fairfield Glade, Tennessee, from approximately 2001 until September of 2012.

20

(119)   Judith McGinty had access to Wyndham's confidential and proprietary information relating to Wyndham owners.   She developed and/or cultivated relationships with these owners during her employment at Wyndham.

(120)   Judith McGinty, agreed to abide by the Business Principles of Wyndham.   The Business Principles mandated that she take precautions to protect against the unlawful and inappropriate use of or disclosure of Wyndham's confidential and proprietary information during her employment.  <u>See</u> (Attached, Exhibit # 3).

(121)   The Business Principles required Judith McGinty take precautions to protect against the unlawful and inappropriate use of or disclosure of Wyndham's confidential and proprietary information after her employment terminated with Wyndham.   <u>See</u> (Attached, Exhibit # 3).

(122)   Judith McGinty executed Salesperson Agreement on November 9, 2011.  <u>See</u> (Attached, Exhibit # 5).

(123)   The Salesperson Agreements placed contractual restrictions on Judith McGinty's use of Wyndham's confidential and proprietary data and information.  <u>See</u> (Attached, Exhibit # 5).

(124)   The Salesperson Agreement included covenants not to solicit Wyndham employees, clients, owners, prospects, or Wyndham's goods or services providers.   <u>See</u> (Attached, Exhibit # 5).

(125)   Judith McGinty utilized both her knowledge as an employee and her relationships with Wyndham owners to interfere with Wyndham's business.   Judith McGinty, acting in concert with the other Defendants, and while an employee of Wyndham, referred Wyndham

21

owners to the other Defendants and/or coordinated/facilitated meetings between Defendants and Wyndham owners.

(126) On or about the weekend of June 23, 2012, Judith McGinty called in sick to work at Fairfield Glade and traveled to Wyndham Plantation in Villa Rica, Georgia, to meet with Wyndham owners on behalf of and/or with the Defendants. The purpose of this surreptitious meeting was to induce Wyndham owners to abandon their Wyndham contracts and purchase Defendants' timeshare services.

(127) Judith McGinty was also present at a meeting with Dean Spigner and several Wyndham customers on or about August 23 and/or August 25 of 2012. These meetings took place at Dean Spigner's residence in Fairfield Glade and were for the express purpose of inducing Wyndham owners to abandon or transfer their Wyndham contracts to Defendants and to purchase Defendants' timeshare services.

(128) Judith McGinty worked for the Spigners and/or The Consulting Group, Inc. She attempted to and/or profited by contacting Wyndham owners and marketing Defendants' services to the determinant of Wyndham.

(129) Causes of action against Judith McGinty are predicated upon theories under 18 U.S.C. §§ 1962(c) & 1962(d), Breach of Contract and Breach of Loyalty. These will be addressed below in greater detail.

## CAUSES OF ACTION

### CLAIM I

### Civil RICO 28 U.S.C. § 1962(c)

22

(130)   Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (129) of this Complaint as if each were set forth separately herein.

(131)   The Defendants, their agents and/or employees are a group of persons, formal or informal, associated together for the common purpose of engaging in conduct constituting an association-in-fact.  The various Defendants/companies function together as a continuing unit.

(132)   From on or about May 2012 to present, Defendants, all of whom are persons within the meaning of RICO, were employed by or associated with an enterprise whose activities engaged in or affected interstate commerce and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of *18 U.S.C. § 1962(c)*; including multiple acts of mail fraud, wire fraud, and/or financial fraud.

(133)   Defendants' acts are arranged and ordered so as to exhibit both a relationship between the predicate acts and the threat of continuing criminal activity.  Defendants' acts of mail fraud, wire fraud, and financial fraud are occurring on an ongoing and daily basis targeting all timeshare owners, including Wyndham timeshare owners.

(134)   On June 3, 2012, Dean Spigner left his sales position at Wyndham where he made several hundred thousand dollars a year to participate in this association-in-fact enterprise for purposes of generating substantial financial gain on an ongoing/continuing basis and to replace his Wyndham income.  Defendants Superior Timeshare Closing and Superior Vacations have been profiting from timeshare owners and timeshare transfer services since at least 2009.  Defendant, Charles Simerka, has been involved with several nefarious timeshare cancellation/transfer services since leaving Wyndham on August 9, 2011, including Defendants'

enterprise and VO Group, some of the directors of which are currently under Federal Criminal Indictment in New Jersey.

(135) Upon information and belief, Defendants market their services to all timeshare owners, not just Wyndham Owners. Defendants utilize wire fraud, mail fraud, and/or financial fraud to accomplish or further the enterprise's fraudulent scheme and Defendants' actions are violations of public policy, violations of state statutes, and affect interstate commerce. The nature of Defendants' predicate acts, business model and organizational structure involve a distinct threat of long-term racketeering activity.

(136) Defendants have the same or similar purposes, results, participants, victims, methods of commission, and are interrelated by distinguishing characteristics, specific hierarchy and meticulous organization. The acts committed by Defendants are not isolated events, but represent a pattern of deceptive, fraudulent, illegal and predatory practices occurring on a daily basis. Defendants are associated in such a manner as to form an ongoing organization, formal or informal, and function as a continuing unit of the RICO enterprise.

(137) The organization's hierarchy is detailed in the Background of this Complaint. The organization functions with Dean Spigner orchestrating and meticulously structuring various companies and multiple individuals, including both former and current Wyndham employees, all within the enterprise and all necessary to accomplish each step or aspect of the fraudulent scheme. The meticulous structure is further necessary to accomplish the enterprise's ultimate objectives.

(138) Dean Spigner utilizes his father, Ray Spigner, as a straw man CEO of The Consulting Group because he is contractually prohibited from having direct contact with Wyndham customers until June 2, 2013. Upon information and belief, the Defendants utilize the

24

telephone when prospecting or targeting Wyndham owners in an effort to conceal Dean Spigner's identity and Dean Spigner represents himself as his father Ray Spigner if the prospect is a Wyndham timeshare owner.

(139) Defendants' enterprise has an existence that is independent to and/or separate from the pattern of racketeering activity in which it engages. Defendants have some raison d'etre beyond mere criminality. The association-in-fact enterprise in this case consists of a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

(140) Defendants utilize multiple methods for targeting timeshare owners, including Wyndham timeshare owners. Dean Spigner utilizes confidential customer information and client list[s] he has personally taken from Wyndham and he utilizes other former and current Wyndham employees for access to confidential Wyndham customer information.

(141) Defendants utilized Judith McGinty in June of 2012 to access confidential customer information. Judith McGinty was a Wyndham employee at Fairfield Glade in Tennessee in June of 2012. Judith McGinty called in sick at Wyndham on the weekend of June 23, 2012, and drove to Wyndham Plantation at Villa Rica, Georgia, to meet with two Wyndham owners on behalf of Defendants and Dean Spigner. The Defendants then attempted to utilize a Wyndham employee and Wyndham confidential information for Defendants' financial gain and to interfere with Wyndham's business and contractual relations.

(142) Defendants operate a table or a booth in the lobby of Wyndham Plantation at Villa Rica, Georgia. The front desk person at Wyndham Plantation refers individuals checking in to Defendants' booth. Defendants attempt to initially provide the impression that they are associated with Wyndham and that they are there to assist Wyndham owners.

(143) Defendants target Wyndham owners through fraudulent, illegal and deceptive practices including "bait and switch" tactics. Defendants "bait" Wyndham owners with the impression that Defendants are associated with Wyndham and can reduce or eliminate maintenance fees under the owners' Wyndham contracts. Defendants then attempt to arrange a time for the Wyndham owners to attend a seminar or presentation.

(144) Wyndham owners later attend Defendants' seminar in a conference room at Wyndham Plantation. Defendants' seminar, however, does not focus on reducing fees under Wyndham contracts.

(145) Defendants' presentation is conducted by one of several John or Jane Doe employees or agents of Defendants. Dean Spigner will attend these presentations by telephone if questions should arise or more pressure tactics are necessary to consummate the deal. Dean Spigner attends by telephone and represents himself as Ray Spigner if the prospect is a Wyndham owner.

(145) Defendants utilize the seminar to conduct the "switch" consisting of a high pressure, deceptive presentation designed to fleece timeshare owners. Defendants convince Wyndham owners that their Wyndham contracts have no value and make misrepresentations in an effort to induce Wyndham owners to pay Defendants to assume title of their timeshare. Wyndham owners believe they are transferring title to Superior Timeshare Closing, but Superior does not take or assume title. Defendants/Superior then attempt to sell the same timeshare, they represented had no value, to a third-party purchaser for substantial profit.

(146) Defendants represent that transferring title requires up to 180 days and Wyndham owners are actually held responsible for fees for at least 180 days after the owners pay Defendants to assume title. Title is not transferred from Wyndham owners until and unless

26

Defendants are able to procure a third-party purchaser for the contract during that 180 day period. Wyndham owners are not refunded any fees if the third-party purchaser is procured within 30 days and title is transferred sooner. Title may also never transfer out of the Wyndham owner's name if a third-party purchaser is not procured after 180 days.

(147) Upon information and belief, Defendants may attempt to transfer the timeshare titles into judgment proof sham LLCs if they are unable to procure a third-party purchaser. These fraudulent conveyances would be void/voidable and would not operate to alleviate the timeshare owner's contractual or legal obligations as represented. Fraudulent conveyances are a violation of public policy, are illegal, affect interstate commerce and are expressly prohibited by various state statutes including Tenn. Code Ann. § 66-3-101. A fraudulent conveyance would be made with the intent to hinder, delay or defraud creditors such as Wyndham.

(148) Defendants induce the timeshare owners to pay for the illegitimate transfer for reasons other than just to collect transfer fees from timeshare owners. Defendants induce Wyndham owners to transfer their Wyndham contract so that they can then purchase Defendants' timeshare contracts. Timeshare owners are fleeced out of thousands of additional dollars to purchase something they already owned and that may not even provide all of the benefits and flexibility of the Wyndham timeshare contract.

(149) Defendants, including Dean Spigner, have met with at least four individuals that were Wyndham owners during August of 2012, in an effort to fleece the Wyndham owners with Defendants scheme. These meetings occurred at Fairfield Glade, a Wyndham facility in Tennessee.

(150) Defendants utilize the internet, email, U.S. Mail, Fed Ex, UPS and/or telephone to communicate with prospective clients regarding the services they offer and to induce timeshare

27

owners into believing that Defendants' transfers are legal and operate to relieve timeshare owners of continued legal/contractual liability. Defendants make fraudulent and deceptive misrepresentations during these communications and/or utilize these communications to further the activities of the enterprise.

(151) Defendants utilize the internet, email, U.S. Mail, Fed Ex, UPS and/or telephone to communicate with individuals purchasing their services on how to complete forms, make payment and utilize their services. Defendants make fraudulent and deceptive misrepresentations during these communications and/or utilize these communications to further activities of the enterprise. Defendants do not actually immediately offer services which relieve owners of their continued legal/contractual liability. Instead, Defendants use the purported offer to transfer to create inventory of timeshare property to be sold without taking on any risk of actual ownership because Defendants do not transfer title until the property in question is resold.

(152) Defendants utilize U.S. Mail, Fed Ex, and/or UPS to disseminate records, to send forms, to send timeshare owners a closing statement and a new deed, and to notify the resort management of the transfer of title. Defendants may also send the seller a copy of the transferring deed.

(153) Wyndham sustains damages as a result of Defendants' actions.

(154) Wyndham is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(c).

### CLAIM II

### Civil RICO 28 U.S.C. § 1962(d)

(155)   Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (155) of this Complaint as if each were set forth separately herein.

(156)   Wyndham has been injured by Defendants' conspiracy to violate 18 U.S.C. § 1962(c), and Defendants' conduct constitute a violation of 18 U.S.C. § 1962(d) irrespective of Defendants' violation of subsection (c).

(157)   Defendants act in concert and conspired to profit financially by defrauding timeshare owners and by inducing timeshare owners to participating in illegitimate, misrepresented, illegal and/or fraudulent conveyances carefully orchestrated and designed to hinder, delay, and defraud Wyndham of its contractual rights.

(158)   Defendants act in concert use fraudulent, deceptive and illegal sales tactics to induce Wyndham timeshare owners, and other timeshare owners, to pay Defendants to assume their titles and to fleece timeshare owners out of thousands of dollars to purchase something they already owned.

(159)   A civil conspiracy between the various Defendants was a vital and integral aspect to accomplishing the Defendants unlawful purposes.

(160)   The complexity of the organizational structure and the method of transaction clearly reflects that each Defendant had a common purpose supported by a concerted action to defraud.  Each Defendant had the intent to defraud, that intent was common to each Defendant and each Defendant had the understanding that the other[s] had the intent to defraud.

(161)   Wyndham is entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(d).

<strong>CLAIM III</strong>

## Intentional Interference with Current and Prospective

## Business Relations

(162)   Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (161) of this Complaint as if each were set forth separately herein.

(163)   Wyndham had an existing relationship with specific third-parties (Wyndham owners) and/or prospective business relationships with identifiable third-parties that were affected as a result of Defendants' actions.   Wyndham has expended considerable effort, time and resources to develop these current and prospective business relationships.

(164)   Defendants had actual and/or constructive knowledge of these relationships, expectancies, and opportunities.   Defendants have specific knowledge of certain Wyndham business relationships and prospective business relationships.

(165)   Dean Spigner, Judith McGinty, and Charles Simerka cultivated relationships with Wyndham's current and prospective customers while employed at Wyndham.   Their contact with Wyndham owners is improper and is a violation of contract, a breach of fiduciary duties, a breach of fiduciary relationships, overreaching, and constitutes unfair competition.

(166)   Defendants have utilized current and former employees to gain access to confidential customer information and to meet with existing Wyndham owners in an effort to induce Wyndham owners to cancel/transfer/sell their Wyndham contracts and purchase Defendants timeshare contracts.

(167)   Defendants provide false impressions that they are associated with Wyndham, use "bait and switch" tactics, and have utilized current Wyndham employees to meet with Wyndham

30

owners in an effort to interfere with Wyndham's business relationships and market Defendants' services.

(168)    Defendants clear intent is to cause breach or termination of the business relationship Wyndham had with Wyndham Owners.  Defendants utilize deceptive, fraudulent, and illegal tactics to accomplish this purpose.

(169)  Defendants had an improper motive and/or improper means for intending to cause the breach or termination of Wyndham business relationships with Wyndham owners. Defendants predominate purpose was/is to defraud Wyndham owners and interfere with Wyndham's business relationships for purposes of Defendants' financial gain.

(170)  Defendants' acted willfully in persuading or attempting to persuade Wyndham owners to cease business with Wyndham.  These actions constitute intentional and wrongful interference with existing business and the actions impact potential future business.  A large aspect of Wyndham's timeshare business emanates from existing owners expanding their ownership and referring third-parties to Wyndham.

(171)  Defendants' interference with Wyndham's business is willful and malicious.

(172)  Defendants' interference involves deceit, fraud, undue influence, misuse of inside information, breach of fiduciary relationships, overreaching conduct, and constitutes unfair competition.

(173)  Wyndham has suffered damages and significant harm as a direct and proximate result of Defendants' tortuous interference Wyndham's business relations.

(174)  Wyndham is entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

(175)  Wyndham is entitled to punitive damages.

31

## CLAIM IV

### Breach of Contract

(176)   Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (175) of this Complaint as if each were set forth separately herein.

(177)   Dean Spigner, Judith McGinty, and Charles Simerka are/were under contractual obligations with Wyndham.  Dean Spigner executed a Salesperson Agreement on August 29, 2011.  See (Attached, Exhibit # 1).  Charles Simerka executed Salesperson Agreements on or about April 30, 2007.  See (Attached, Exhibit # 4).  Judith McGinty executed Salesperson Agreements on or about November 9, 2011.  See (Attached, Exhibit # 5).

(178)   These Salesperson Agreements placed contractual restrictions on Dean Spinger's, Judith McGinty's, and Charles Simerka's use of Wyndham's confidential and proprietary information.   All three individuals have breached their contractual agreements not utilize confidential and proprietary information.

(179)   Dean Spigner executed an agreement with Wyndham prohibiting him from hiring or utilizing Wyndham employees for his own business purpose:

> Salesperson agrees that, for a period of twelve (12) months after Salesperson's termination of employment, whether such termination is at Salesperson's or WVR's initiative and whether for cause or without cause, Salesperson will not, for himself/herself or for any person, firms, business corporation or entity with which he/she is or may become associated in any capacity, engage in any of the following:
>
> **(i)   hire, offer to hire, recommend for hiring, contact solicit, suggest, persuade, attempt to persuade, or identify for recruiting purposes any employee of WVR or any person who worked or provided services for WVR for employment or for the establishment of any other business relationship, including retention as a consultant or independent contractor;**

32

See (Attached, Exhibit 2) (emphasis added).

(180)  Dean Spigner utilized Wyndham employee Judith McGinty on or about June 23, 2012, for Defendants' business purposes.  Judith McGinty took time off from Wyndham, by calling in sick, so she could meet with Wyndham customers on behalf of the Defendants.

(181)  Dean Spigner also utilized Judith McGinty to arrange a meeting with Wyndham owners who were vacationing at Fairfield Glade where Judith McGinty was assigned by Wyndham.  Dean Spigner also utilized Wyndham employee, Sheryl Crane, to facilitate meetings with Wyndham owners at Fairfield Glade.

(182)  Upon information and belief, Dean Spigner currently employees former Wyndham employees that may be operating under an alias.  Defendants hired Charles Simerka who is a former Wyndham employee.

(183)  Dean Spigner utilizes former and current employees of Wyndham for the express purpose of why such conduct is prohibited.  Dean Spigner harms Wyndham and attempts to profit financially by utilizing current and former Wyndham employees to gain access to Wyndham customers and their confidential information and to further the false impression that Defendants are associated with Wyndham.

(184)  Dean Spigner is also contractually prohibited, until June 2, 2013, from having contact with Wyndham owners/clients pursuant to the following provision set forth in his Salesperson Agreement:

> Salesperson agree that, for a period of twelve (12) months after Salesperson's termination of employment, whether such termination is at Salesperson's or WVR's initiative and whether for cause or without cause, Salesperson will not, for himself/herself or for any person, firms, business corporation or entity with which he/she is or may become associated in any capacity, engage in any of the following:

33

(ii) contact, solicit, suggest, persuade, or attempt to persuade any individual or entity that is a customer of or owner with WVR to discontinue his, her, or its relationship with WVR; (iii) contact, solicit, suggest, persuade, attempt to persuade, or identify for sales or marketing purposes any person whom Salesperson, as a result of [his]/her employment with MVR, met, communicated with, contacted, identified, or whose identity became known to Salesperson as a potential purchaser of timeshare, vacation club or related products or services for the establishment of any business or contractual relationship relating to the purchase of timeshare, vacation club or related services;

See (Attached, Exhibit # 2) (emphasis added). Charles Simerka and Judith McGinty were bound by the same provisions contained in their Salesperson Agreements. See (Attached, Exhibit # 4) (emphasis added).

(185) Dean Spigner's current business and his enterprise with all Defendants have the express purpose of contacting Wyndham owners and interfering with Wyndham customer relations and contractual rights.

(186) Dean Spigner personally met with Wyndham owners on August 23, 2012, and on or about August 25, 2012. These type of occurrences likely happen on a daily basis, but Wyndham only learns of such contact when upset Wyndham owners complain to Wyndham about Dean Spigner contacting them.

(187) Upon information and belief, Dean Spigner frequently misrepresents himself as his father, Ray Spigner, when attempting to assist his employees close deals with Wyndham customers at Wyndham Plantation at Villa Rica, Georgia. The purpose of these misrepresentations is to prevent Wyndham from enforcing its legitimate contractual rights. Dean Spigner had contact with Wyndham owners on or about June 15, 2012.

34

(188) Dean Spigner has contacted, solicited, suggested, persuaded, and/or attempted to persuade Wyndham customers and/or owners to discontinue their relationship with Wyndham since at least June 3, 2012. Upon information and belief, Dean Spigner contacted, solicited, persuaded, and/or attempted to persuade Wyndham customers and/or owners to discontinue their relationship with Wyndham prior to June 3, 2012.

(189) Dean Spigner has violated ¶¶ 10(i), (ii), (iii), and (iv) of the Salesperson Agreement[s] he entered into with Wyndham.

(190) Charles Simerka has contacted, solicited, suggested, persuaded, and/or attempted to persuade Wyndham customers and/or owners to discontinue their relationship with Wyndham while working for/with Defendants.

(191) Charles Simerka has violated ¶¶ 10(ii), (iii), and (iv) of the Salesperson Agreement[s] he entered into with Wyndham.

(192) Judith McGinty has contacted, solicited, suggested, persuaded, and/or attempted to persuade Wyndham customers and/or owners to discontinue their relationship with Wyndham while working for/with Defendants. Judith McGinty met with Wyndham owners, on behalf of Defendants and while employed at Wyndham, on or about June 23, 2012, August 23, 2012, and/or August 25, 2012.

(193) Judith McGinty has violated ¶¶ 10(ii), (iii), and (iv) of the Salesperson Agreement[s] she entered into with Wyndham.

(194) Dean Spigner, Judith McGinty, and Charles Simerka agreed to indemnify and/or reimburse Wyndham for damages, expenses, attorney's fees, and costs that Wyndham may incur as the result of any act or omission by them in violation of the Salesperson Agreement[s]. See (Attached, Exhibit ## 1 & 4).

35

(195)    Dean Spigner's, Judith McGinty's, and Charles Simerka's Salesperson Agreements require them to "protect, defend, and indemnify [Wyndham] for all losses, costs, liabilities, claims (including costs of investigation, refunds, fines, damages or expenses, including attorneys' fees and expenses" incurred in connection with any "act or omission" by them "(a) in violation of the Contract Standards or any other provision of [the Salesperson] Agreement, including but not limited to Salesperson's obligations under Paragraphs 6, 8, 9, and 10: (b) in violation of the Conflict of Interest States; (c) which constitutes a material misrepresentation by Salesperson and/or (d) which constitutes any violation of law." See (Attached, Exhibit ## 1 & 4).

(196)    Wyndham is entitled to liquidated damages, actual damages, losses, costs, attorney's fees, and all expenses associated with this lawsuit and Dean Spigner's, Judith McGinty's, and Charles Simerka's actions and/or omissions under their contracts.

(197)  Dean Spigner is vicariously liable and responsible for the actions and/or omissions of Defendants' agents/employees constituting breach of the Salesperson Agreement.  This vicarious liability is predicated upon co-conspirator principles.  Dean Spigner cannot, with impunity, direct others to in engage conduct which he is contractually prohibited from engaging under his Salesperson Agreement.

## CLAIM V

## Intentional Interference with Contractual Relations

(198)    Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (197) of this Complaint as if each were set forth separately herein.

(199)  Wyndham has valid and binding contracts with third-parties, Wyndham Owners.

36

(200)  Defendants have knowledge of these contracts.

(201)  Defendants conspired with the intent to have Wyndham Owners violate the terms of their contracts.

(202)  Upon information and belief, Defendants utilize fraud, deception, and deceit to induce Wyndham Owners to violate their contracts as part of this conspiracy.  Defendants use deceptive sales practices such as "bait and switch" tactics.  Defendants misrepresent the services they are providing and make fraudulent statements to induce Wyndham owners to agree to pay Defendants to assume title of their Wyndham timeshare properties.  Defendants do not assume title and/or may use sham companies with the intent to defraud creditors such as Wyndham.

(203)  Upon information and belief, Wyndham Owners have been induced to breach and did breach their contracts as a direct and proximate result of this intentional interference.

(204)  Upon information and belief, Defendants acted intentionally, willfully, and maliciously by interfering with the Wyndham owners' contracts.

(205)  Defendants' actions are a direct and proximate cause significant harm to Wyndham.

(206)  Wyndham is entitled to an award for damages.

(207)  Defendants are jointly and severally liable to Wyndham for damages in an amount to be determined at trial.

(208)  Wyndham is entitled to an award for punitive damages.

**CLAIM VI**

**Procurement of Breach of Contract**

**TENN. CODE ANN. § 47-50-109**

(209)   Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (208) of this Complaint as if each were set forth separately herein.

(210)   Wyndham has valid and binding contracts with third parties, Wyndham owners.

(211)   Defendants had knowledge of these contracts.

(212)   Defendants conspired with the intent to have Wyndham owners violate the terms of their contracts.

(213)   Defendants engaged in fraudulent and deceptive conduct, as outlined above, with others with the intent to interfere with the contracts between Wyndham and Wyndham owners.

(214)   Upon information and belief, Defendants used inducement, persuasion, misrepresentation, and/or other means, to induce or procure the breaches of these contracts.

(215)   Upon information and belief, Wyndham owners were induced to breach and did breach their contracts as a direct and proximate result of Defendant's procurement.

(216)   Defendants' actions are a direct and proximate cause of significant harm to Wyndham.

(217)   Wyndham is entitled to an award for damages against Defendants.

(218)   Defendants are jointly and severally liable to Wyndham for damages in an amount to be determined at trial.

(219)   Wyndham is entitled to punitive damages.

(220)   Wyndham is entitled to treble damages under the statute.

**CLAIM VII**

**Breach of Duty and/or Continuing Duty of Loyalty**

**Dean Spigner**

(221)  Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (220) of this Complaint as if each were set forth separately herein.

(222)  Dean Spigner is a former employee still bound by terms and conditions contained in his Salesperson Agreement.  He has utilized both current employees of Wyndham and Wyndham confidential information in direct competition with the financial, proprietary, and business interests of Wyndham.

(223)  Dean Spigner has placed his own personal financial interests before those of Wyndham.  He is utilizing certain confidential information regarding Wyndham customer relations policies and practices for his own personal gain and to the detriment of Wyndham.

(224)  Dean Spigner, Defendants, and the association-in-fact enterprise have committed a myriad of ongoing destructive acts toward Wyndham that constitute more than mere mistake in judgment or negligence.

(225)  Dean Spigner's breach of loyalty and actions are intentional destructive acts completed explicitly for Dean Spigner's own self interest in direct violation or competition with the interests of Wyndham.

(226)  Wyndham is entitled to an award for damages from Dean Spigner including, but not limited to, disgorgement of profits and return of any salary or commissions made during which time he committed his acts constituting breach of loyalty.

**CLAIM VIII**

**Breach of Duty and/or Continuing Duty of Loyalty**

**Judith McGinty**

39

(227) Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (226) of this Complaint as if each were set forth separately herein.

(228) Judith McGinty was a Wyndham employee bound by terms and conditions contained in her Salesperson Agreement. While an employee, she utilized Wyndham confidential information and her contract with Wyndham owners in direct competition with the financial, proprietary, and business interests of Wyndham.

(229) Judith McGinty has placed her own personal financial interests before those of Wyndham. She was/is utilizing certain confidential information regarding Wyndham customer relations policies and practices for her own personal gain and to the detriment of Wyndham.

(230) Judith McGinty, Defendants, and the association-in-fact enterprise have committed a myriad of ongoing destructive acts toward Wyndham that constitute more than mere mistake in judgment or negligence.

(231) Judith McGinty's breach of loyalty and actions are intentional destructive acts completed explicitly for Judith McGinty's own self interest in direct violation or competition with the interests of Wyndham.

(232) Wyndham is entitled to an award for damages from Judith McGinty including, but not limited to, disgorgement of profits and return of any salary or commissions made during which time she committed her acts constituting breach of loyalty.

## CLAIM IX

### Violation of the Tennessee Consumer Protection Act

### TENN. CODE ANN. § 47-18-101, *et seq.*

(233) Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (232) of this Complaint as if each were set forth separately herein.

(234) Defendants' acts constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

(235) Defendants' utilize false and deceptive practices including, but not limited to "bait and switch" sales tactics. As outlined above, Defendants utilize fraudulent and deceptive means to promote their services and products and to induce Wyndham owners to discontinue their business and contractual relationships with Wyndham.

(236) Defendants promote the use of, and induce timeshare owners to pay for, illegitimate transfers of property title and/or make fraudulent and deceptive representations about the services Defendants' provide and legal responsibilities of timeshare owners. Defendants fleece timeshare owners and Wyndham customers out of thousands of dollars to essentially purchase a product they had already owned.

(237) Defendants' actions and/or omissions constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

(238) Defendants acted in a concerted effort to take the actions which violated the Tennessee Consumer Protection Act.

(239) Defendants' actions resulted in an ascertainable loss of money and things of value.

(240) Defendants acted willfully and maliciously in violating the Tennessee Consumer Protection Act.

(241) Defendant's actions are a direct and proximate cause of significant harm to Wyndham.

41

(242) Defendants are jointly and severally liable to Wyndham for damages in an amount to be determined at trial.

(243) Wyndham is entitled to treble damages under the statute.

(244) Wyndham is entitled to reasonable attorneys' fees under the statute.

## CLAIM X

### Civil Conspiracy

(245) Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (244) of this Complaint as if each were set forth separately herein.

(246) In attempting to have Wyndham Owners breach their contracts with Wyndham and/or transfer their property interest, Defendants have a common design and purpose of interfering with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreements.

(247) Defendants have acted in concert with an unlawful purpose, and with unlawful means, to interfere with Wyndham's business relations and/or to induce Wyndham's customers to breach their contractual agreements.

(248) Defendants took overt acts in furtherance of their unlawful conspiracy to interfere with Wyndham's business relations and/or to induce Wyndham's customers to breach their contractual agreements.

(249) Wyndham has sustained damages as a direct and proximate result of Defendants' unlawful conspiracy. These damages include loss of profits and damage to and loss of its goodwill.

42

(250) Defendants' actions are a direct and proximate cause of significant harm to Wyndham.

(251) Defendants are jointly and severally liable to Wyndham for damages in an amount to be determined at trial.

(252) Defendants acted willfully and with malice in taking these actions.

(253) Wyndham is entitled to punitive damages.

## CLAIM XI

### Violation of the Tennessee Uniform Trade Secrets Act

### TENN. CODE ANN. § 47-25-1701, *et seq.*

(254) Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (253) of this Complaint as if each were set forth separately herein.

(255) Wyndham expends considerable time, labor, money, and resources to track statistics and create customer metrics, industry metrics and economic metrics. This information is generated to enhance Wyndham's marketing methodology, develop innovative ideas, develop proprietary processes, and create new customer relationships. The information is further utilized to better serve existing customers. This information is confidential, proprietary and constitutes Wyndham trade secrets. Wyndham makes reasonable efforts to maintain the secrecy of this information.

(256) Wyndham further expends considerable time, resources and effort to generate and protect confidential owner lists, confidential owner information, confidential employee information and confidential costs/pricing data.

(257) Dean Spigner had access to proprietary and confidential information while employed at Wyndham. Charles Simerka had access to proprietary and confidential information while employed at Wyndham. Both individuals' use of this information gives Defendants a competitive advantage, constitutes unfair competition, and is detrimental to Wyndham.

(258) Judith McGinty was employed at Wyndham. She had access to proprietary and confidential information. Defendants' use of the information she possessed or had access to gives Defendants a competitive advantage, constitutes unfair competition, and is detrimental to Wyndham.

(259) Dean Spigner and/or Defendants utilized Judith McGinty to gain access to confidential information and utilized her to prospect, target and meet with Wyndham owners while she was employed at Wyndham. This gives Defendants a competitive advantage, constitutes unfair competition, and is detrimental to Wyndham.

(260) Wyndham's confidential and proprietary information is the result of years of cumulated industry experience, research and analysis and this information cannot be easily duplicated.

(261) Wyndham safeguards this information by permitting only certain employees to have access to the information. Wyndham limits the number of employees that have access to the information. Wyndham implements computer security measures and mandates the execution of confidentiality agreements in an effort to safeguard confidential and proprietary information.

(262) John and Jane Does 1-10 had access to and knowledge of this confidential, proprietary and valuable information.

(263) Wyndham derives significant economic value from the confidential information at issue by gaining a competitive advantage on its competitors and remaining an innovator within

the industry. Wyndham devotes considerable resources to researching and deriving metrics related to consumer purchasing habits within the industry, needs of particular groups of individuals or prospects, needs of particular clients, price points, and development of customer lists.

(264) This information derives considerable value to Wyndham only to the extent that such information is kept confidential. Wyndham's considerable investment of time and resources in generating and compiling this information would be wasted if the information is made known to and/or utilized by competitors.

(265) Defendants' utilization of this information for competitive purposes to the detriment of Wyndham violates the very essence of the purpose in enacting the Tennessee Uniform Trade Secrets Act.

(266) Current and former employees, including Dean Spigner, Charles Simerka, Judith McGinty, and/or John and Jane Does 1 – 10, are bound by general duties not to disclose this confidential information or trade secrets belonging to Wyndham. This duty exists both in contract and in common law.

(267) Upon information and belief, Defendants have intentionally used Wyndham's confidential and proprietary information for various improper purposes, including soliciting Wyndham's customers and attempting to induce these customers to breach contractual agreements with Wyndham.

(268) Wyndham has sustained damages as a direct result of the misappropriation of confidential and proprietary information by its current and former employees and the use of this information by Defendants.

(269) Defendants actions are willful and malicious.

45

(270)   Defendants' actions are a direct and proximate cause of significant harm to Wyndham.

(271)   Defendants are jointly and severally liable to Wyndham for damages in an amount to be determined at trial.

(272)   Wyndham is also entitled to exemplary damages under the statute.

(273)   Wyndham is entitled to reasonable attorneys' fees under the statute.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiffs respectfully request as follows:

(1)   Compensatory damages against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $100,000.

(2)   Compensation, pursuant to Tenn. Code Ann. § 47-25-1701 et seq., for actual damages, loss of profits, unjust enrichment, reasonable royalties, punitive damages, attorney's fees and costs.

(3)   Damages related to the loss of goodwill and the substantial harm Wyndham experiences to its reputation among Wyndham customers that is caused by Defendants' suggestive tactics, deceptive practices and interference with Wyndham's business.

(4)   Loss of future profits and future business as the majority of Wyndham's timeshare revenue is attributable to repeat business, referrals and upgrades by existing Wyndham owners.

(5)   Costs, losses and fees related to the substantial resources needed to address Defendant's willful and malicious actions and related to efforts to mitigate damage to Wyndham's business resulting from Defendants' actions.

46

(6) Liquidated damages against Dean Spigner, Charles Simerka, Judith McGinty and John and Jane Does 1-10 in an amount to be determined at trial, consistent with the terms of the Salesperson Agreements.

(7) Disgorgement of Dean Spigner's and Judith McGinty's unjust enrichment, profits and salary paid by Wyndham occurring during the time frame of his Breach of Duty of Loyalty;

(8) Punitive and exemplary damages against Defendants, jointly and severally, in an amount to be determined at trial.

(9) An award of treble damages and reasonable attorneys' fees, costs and expenses to Wyndham.

(10) An award of pre- and post- judgment interest on any award of damages to the fullest extent allowed by law.

(11) That the costs of this cause be assessed against the defendants;

(12) That Wyndham be granted such other general relief which this Court may deem appropriate; and

(13) That this cause of action be tried before a jury.

Respectfully submitted,

KING & BALLOW

By: _____
R. Eddie Wayland BPR 6045
R. Douglas Hanson, II BPR 017387
Andrew W. Coffman BPR 27160
rew@kingballow.com
dhanson@kingballow.com
acoffman@kingballow.com

Attorneys for Wyndham Vacation Resorts, Inc.
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Tel: (615) 259-3456
Fax: (615) 726-5417

47