UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WYNDHAM VACATION RESORTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:12-cv-00096 |
| | ) | Judge Aleta A. Trauger |
| v. | ) | |
| | ) | |
| THE CONSULTING GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM

Pending before the court are two motions in which the plaintiff, Wyndham Vacations Resorts, Inc. ("Wyndham"), requests leave to amend its Complaint. First, Wyndham has filed a Motion for Leave to File a First Amended Complaint (Docket No. 50) ("First Motion for Leave to Amend"), to which the defendants have filed a Response in opposition (Docket No. 58), and Wyndham filed a Reply (Docket No. 61, Ex. 1). Second, Wyndham has filed a Motion for Leave to File a Second Amended Complaint (Docket No. 73) ("Second Motion for Leave to Amend"), to which the defendants filed a Response in opposition (Docket No. 75).[1] For the reasons stated herein, Wyndham's Second Motion for Leave to Amend will be granted, Wyndham's First Motion for Leave to Amend will be denied as moot, Wyndham will be permitted to file an Amended Complaint, and Wyndham will be ordered to file a supplemental RICO Case

---

[1] With the exception of Charles Simerka, who is proceeding *pro se*, the defendants have submitted joint filings with respect to the pending motions. Although Wyndham's proposed amendments and the moving defendants' oppositions thereto relate in part to the specific claims against Simerka, Simerka has not formally joined in the moving defendants' briefs. Given Simerka's *pro se* status, the court will treat the moving defendants' arguments as equally applicable to Simerka.

Statement.

## BACKGROUND

I. **Pending Motions for Leave to Amend**

In its original Complaint (Docket No. 1) and the court-ordered "RICO Case Statement" (Docket No. 26)[2], Wyndham alleges that the defendants collaborated in a complex conspiracy to defraud both Wyndham and individuals who purchased time-share properties from Wyndham (Wyndham's "owners"). Wyndham's Complaint asserts, *inter alia*, RICO claims premised on mail and wire fraud, violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*, and violations of the Tennessee Uniform Trade Secrets Act ("UTSA"), Tenn. Code Ann. § 47-25-1701 *et seq.*, as well as claims against certain former Wyndham employees, including Simerka, who allegedly violated their employment agreements and/or duty of loyalty to Wyndham after leaving the company and participating in the scam. Each defendant filed an Answer to the Complaint and the parties initiated discovery.[3]

On May 1, 2013, in advance of the original court-ordered deadline for Rule 15 motions (*see* Docket No. 33, original Case Management Order), Wyndham sought leave to file Proposed First Amended Complaint ("Proposed FAC") (Docket No. 50, Ex. 1). After receiving a brief extension of the court's Rule 15 deadline (Docket No. 70) – and before the court ruled on Wyndham's pending First Motion for Leave to Amend – Wyndham sought leave to file a Proposed Second Amended Complaint ("Proposed SAC") (*see* Docket No. 73, Ex. 1), which

---

[2] It is the local practice of this court to order any party alleging a claim under the RICO statute to file a RICO Case Statement that provides specific details concerning the alleged RICO conspiracy.

[3] Wyndham has deposed each defendant. The current discovery deadline is November 1, 2013. (*See* Docket No. 78, Amended Case Management Order.)

incorporates and supplements the previous proposed amendments. Taken collectively, Wyndham proposes to (1) correct the name of a particular defendant; (2) correct the exhibits to the Complaint;[4] (3) dismiss the UTSA claim without prejudice; (4) provide more detailed allegations concerning the nature of the alleged conspiracy, the actions of its participants, and additional specific allegations concerning potential predicate acts under RICO; (5) add five new defendants to the lawsuit, (6) add a new party plaintiff, Wyndham Vacation Management ("WVM"); (7) amend its claim under the Tennessee Consumer Protection Act ("TCPA"); and (8) amend and narrow the allegations relative to defendants Charles Simerka and Judith McGinty.

The parties have treated their arguments relative to the first motion as equally applicable to the second motion. Therefore, the court will do the same.

## II. Overview of Proposed Allegations in the Proposed Second Amended Complaint[5]

According to the Proposed SAC, Wyndham operates resorts worldwide and sells time-share properties to individual clients ("owners"), some of whom take title to the property by deed of trust and pay Wyndham periodic maintenance fees to maintain the property. Through an internal points-based system, Wyndham permits the owners to utilize and exchange time-share interests with other owners at Wyndham's domestic and international locations.

The Proposed SAC details a complex scheme by which several individuals and companies have allegedly defrauded both Wyndham and its owners. According to the Proposed SAC, Jeff

---

[4]It appears that Wyndham inadvertently attached exhibits to the Complaint corresponding to employees who are not in this case. Wyndham's proposed amendments now include exhibits that correspond to the named defendants.

[5]For purposes of this section, the court will assume that the well-pleaded allegations in the Proposed SAC are true. The court also presumes that the updated allegations in the Proposed SAC will, if allowed, moot the proposed amendments in the Proposed FAC.

Earle, who owns and operates Mountain Getaways LLC ("Mountain Getaways") and Smokey Mountain Getaways LLC ("Smokey Mountain"), is the mastermind behind the alleged scam. Earle targets time-share owners – some of whom happen to be Wyndham owners – and convinces them to attend a presentation that purportedly will explain how the owners can avoid paying maintenance fees to Wyndham (the "bait"). At the presentation, Smokey Mountain Getaways actually attempts to convince the owners to transfer their Wyndham assets to a third-party purchaser by representing that the Wyndham contracts have no value, that the owners' heirs cannot refuse the deeds and will be saddled with the deeds' contractual obligations, and that Wyndham will ruin their heirs' credit (the "switch"). According to Wyndham, these representations are false. Moreover, they are designed to serve an ulterior motive: once an owner is convinced to transfer the Wyndham deed under false pretenses, Smokey Mountain convinces that individual to purchase Smokey Mountain's "vacation club package" (apparently licensed by Mountain Getaways), which Wyndham alleges is inferior to Wyndham's services for unspecified reasons.

To facilitate this scheme, Earle collaborates with Superior Vacations, Inc. d/b/a Superior Timeshare Closing ("Superior"), a company owned and/or operated by Daniel Garrett and his daughter Christal Franklin. At the high-pressure sales presentations to Wyndham owners, Smokey Mountain indicates that Superior will facilitate a deed transfer to an unnamed third party purchaser in return for a $3,000 fee payable up front by the owner. Smokey Mountain presents a "Superior" document at the presentation that purports to authorize Superior to make a deed transfer, and Smokey Mountain purports to have authority to countersign the agreement at the presentation on Superior's behalf.

Smokey Mountain and Superior represent that a third-party person or entity is ready to purchase the owner's deed and that the fee is for an attorney to conduct the transaction, when in fact neither representation is true. Smokey Mountain and Superior both know that there is no *bona fide* third-party purchaser and no attorney to conduct the deed transfer. Instead, after convincing the owners to sign the Superior transfer documents, Smokey Mountain forwards the paperwork to Superior with the understanding that Superior will either (a) not transfer the deed at all, or (b) transfer the deed to a judgment-proof sham purchaser. When Superior in fact arranges a transfer, Garrett signs the purported transfer on behalf of a fictitious or sham third party (such as an incarcerated individual or an elderly individual with no knowledge of the transaction) pursuant to a fictitious "power of attorney."

Franklin transmits to Wyndham's title department the records reflecting these sham transactions, which falsely represent that the (sham) third party paid consideration to the owner for the transfer, and which, at times, contain fake names, addresses, and telephone numbers. By submitting this information to Wyndham, Superior intends to give Wyndham's title department the impression that a lawful arm's length transaction occurred between the Wyndham owner and a *bona fide* third-party purchaser. This ruse apparently works, as Wyndham has unwittingly approved numerous sham transfers.[6] At any rate, Superior pockets the $3,000 fee, and the owners (if no transfer took place) or the sham transferees (if a transfer purportedly took place) default on their maintenance fee obligations to Wyndham. The owners often default without knowing it. Moreover, owners often end up saddled with *both* the Mountain Getaways vacation

---

[6]The Proposed SAC implicitly suggests that Wyndham has some authority to approve the transfers.

5

package *and* the Wyndham deed that they thought they had transferred.

According to the Proposed SAC, Earle recognized a potential business opportunity with The Consultant Group (incorrectly identified in the Complaint as "The Consulting Group, Inc."), a Tennessee partnership owned, operated and managed by Ray Spigner and his son Dean Spigner. Until June 3, 2012, Dean Spigner worked for Wyndham at multiple locations, including Fairfield Glade in Tennessee and the "Wyndham Plantation" in Villa Rica, Georgia – a former Wyndham facility that retained the "Wyndham" name and that Wyndham owners still utilize under Wyndham deeds. Ray Spigner also formerly worked for Wyndham. At an unspecified time before Dean Spigner left Wyndham, Mountain Getaways allegedly introduced the Consultant Group to Superior, explained how the scam operated, designed the Consultant Group's website for vacation club booking, and provided licenses to the Consultant Group's customers.

In June 2012, immediately following Dean Spigner's termination from Wyndham, the Consultant Group allegedly began soliciting Wyndham customers as part of the same scam. For example, the Consultant Group set up a booth in the Villa Rica "Wyndham Plantation" to solicit Wyndham guests at the facility. The employees at the booth wore Wyndham outfits and the booth had a Wyndham banner, giving the impression that the booth was somehow affiliated with Wyndham. According to the Proposed SAC, the Wyndham Plantation property managers were aware of the scam and permitted it to occur, so long as the Consultant Group did not target certain types of Wyndham Plantation guests who regularly paid fees to the facility operators (*i.e.*, not to Wyndham). (*See* Proposed SAC ¶ 57.)

As with Earle's alleged scam, the Consultant Group allegedly "baited" Wyndham owners

6

with the promise of reducing maintenance fees and then "switched" by engaging in a misleading, high-pressure sales presentation to convince the Wyndham owners to transfer their deeds and to purchase the Consultant Group's vacation package instead, which apparently was the same Mountain Getaways package marketed by Earle and Smokey Mountain. The Consultant Group signed on behalf of Superior using the "Superior" documents, induced the owners to pay a $3,000 fee that the Consultant Group knew Superior would pocket without facilitating a legitimate deed transfer, and transmitted the paperwork to Superior for subsequent handling. Superior either failed to process the transaction or, after sending documents to Wyndham reflecting the (allegedly fraudulent) transfers, facilitated a sham transaction. Earle benefitted because Mountain Getaways received both 10% of the Consultant Group's sales and yearly membership fees on the Mountain Getaways vacation package sold by Consultant Group to the Wyndham owners.

The Spigners and/or one of their business associates allegedly conducted the sales presentations on Sunday, Mondays, and Tuesdays on a weekly basis between June 2012 and April 2012. Wyndham also alleges that, in June 2012, Charles Simerka "worked with" the Consultant Group at the Villa Rica location to solicit owners to breach their Wyndham contracts.

### III.     Issues In Dispute

The defendants do not dispute Wyndham's requests to (1) correct the name of one defendant (from the "The Consulting Group, Inc." to "The Consultant Group"), (2) correct the exhibits to the Complaint, and (3) dismiss the UTSA claim and have the court issue an Order stating that the dismissal is without prejudice. Therefore, the court will grant that relief without further analysis and will restrict its discussion to the remaining proposed amendments.

7

## RULE 15 STANDARD

In general, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2) (2011). However, "[a] motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (internal quotation omitted); *see also Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Thus, here, with respect to the issue of futility, the court must analyze the factual allegations under the motion to dismiss standard. Accordingly, the court will "construe the [proposed] complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009). In ruling on a motion to amend, the may also consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, [and] undue prejudice to the opposing party . . . ." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2011).

## ANALYSIS

### I.  Addition of New Defendants

The defendants argue that the additions of Garrett, Franklin, Earle, Smokey Mountain, and Mountain Getaways will be unfairly prejudicial because (1) their addition raises the risk that the existing defendants will be deposed a second time; and (2) as a general matter, their addition

8

will cause the defendants to incur additional litigation fees and costs. At the same time, the defendants expressly state that they are not accusing Wyndham of intentionally seeking to run up the defendants' legal bills and expenses through the proposed amendments.

The court rejects the defendants' argument that adding the new defendants would be unduly prejudicial. In compliance with the existing Case Management Order and the court's extension thereof, Wyndham has timely filed its requests to add new parties under Rule 15. The defendants have not shown that Wyndham unduly delayed in moving to add these parties. Also, the defendants cite to no authority establishing that the risk that existing defendants could be deposed a second time is, standing alone, a sufficient basis to deny the addition of the new defendants here. Indeed, this risk is present any time a new defendant is added after a deposition of at least one defendant is taken. Under the circumstances, the court finds that adding the new defendants is permissible.[7]

## II. Addition of WVM

The Proposed SAC would add WVM as a party plaintiff. Paragraph 39 of the Proposed SAC alleges that WVM "provides services related to contractual fees, homeowners associations, and maintenance fees for points-based products deeded to a trust." However, the proposed allegations do not further explain WVM's potential relationship to the claims at issue.

In its Reply concerning the First Motion for Leave to Amend, Wyndham has explained that WVM performs roles similar to Wyndham for certain "newer" accounts that could be at issue in this case. Wyndham contends, however, that Garrett revealed at his deposition that Superior

---

[7]If the new defendants elect to depose the existing defendants, the existing defendants are not precluded from arguing that cost-shifting against Wyndham would be appropriate. The court expresses no opinion as to whether such a motion would be warranted.

had withheld a substantial number of potentially relevant documents, including documents that might show that WVM is an appropriate party plaintiff. For this reason, Wyndham seeks to add WVM "in abundance of caution" in light of the court-ordered deadline for amending pleadings. Under the circumstances, the court finds that adding WVM as a party is appropriate. However, the court trusts that, if discovery shows that WVM is not a proper party, Wyndham will promptly and voluntarily drop WVM as a party plaintiff.

### III. TCPA Claim

To maintain a private cause of action under the TCPA, a plaintiff must allege a violation of one of the acts specifically enumerated in Tenn. Code Ann. § 47-18-104(a). Although the TCPA contains a "catch-all" provision for "engaging in any other act or practice which is deceptive to the consumer or to any other person," that specific provision is enforceable only by the Tennessee Attorney General's office. Tenn. Code Ann. § 47-18-104(b)(27). Thus, § 104(b)(27) does not confer a private cause of action for unfair or deceptive practices that do not fit within one of the specific acts or practices enumerated in § 104(b). *See Brewer v. Kitchen Designs & Cabinetry*, No. M2012-01248-COA-R3-CV, 2013 WL 1400619, at *7, n. 11 (Tenn. Ct. App. Apr. 5, 2013).

Here, the defendants argue that Wyndham's proposed amendments to the TCPA claims are futile. In response to this argument, Wyndham references passages from the Proposed FAC, but does not state whether any of the referenced conduct constitutes an enumerated deceptive act or practice under § 104(b). At the same time, in point of fact, Wyndham's original Complaint already includes a TCPA claim, which the defendants did not move to dismiss under Rule 12. Thus, the defendants appear to be utilizing Wyndham's Rule 15 motion to make an attack on the

10

TCPA claim that they previously answered.

Although the defendants have not specifically linked the TCPA claim to particular enumerated practices under § 104(b), at least some of the conduct alleged in the Second Amended Complaint plausibly falls within one or more enumerated practices. *See, e.g.*, *id.* at §§104(b)(8) ("[d]isparaging the goods, services, or businesses of another by false or misleading representations of fact"); (b)(3) ("[c]ausing likelihood of confusion or misunderstanding as to affiliation, connection or association with . . . another,"); and (b)(5) ("[r]epresenting that goods or services have . . . characteristics . . . that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that such person does not have"). Because the activities at issue plausibly could fall within several enumerated "unfair or deceptive practices" under the TCPA, the court finds that the amendments to the TCPA claims are not futile.

## IV.   Sufficiency of the Proposed Fraud and RICO Allegations

The defendants argue that Wyndham's proposed amendments do not meet the requirements of Fed. R .Civ. P. 8 and Fed. R. Civ. P. 9(b).

> In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a 'short and plain statement of the claim,' and calls for "simple, concise, and direct" allegations. Indeed, Rule 9(b)'s particularly requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony. Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.

*Michaels Bldg. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) (internal quotations and citations omitted). "It is a principle of fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require

11

omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels*, 848 F.2d at 680).

Under Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). "[H]owever, this requirement should be understood in terms of Rule 9(b)'s broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense." *U.S. ex. rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008). Here, the defendants argue both that the proposed amendments are "needlessly verbose, lengthy and confusing" (for purposes of Rule 8) and fail to plead the fraud allegations with particularity (for purposes of Rule 9(b)).

### B. Rule 8 Challenge

The defendants complain that Wyndham includes background information that does not support a fraud claim, such as the allegation that Wyndham has "13,300 employees globally" (Proposed SAC ¶ 31) and that "Wyndham is an innovator in the timeshare industry" (*Id.* ¶ 19). However, the referenced allegations were already part of the Complaint and the defendants *already* answered them; thus, "striking" them from the Proposed SAC would serve no purpose. Regardless, the court does not construe these allegations as improper, because they simply provide basic context for the nature of Wyndham's business. The defendants also complain that Wyndham makes irrelevant allegations concerning discovery of Superior and Mountain Getaways, which describe Wyndham's unsuccessful efforts to obtain timely information from

those entities. Wyndham apparently included these allegations to explain why it is moving to add Mountain Getaways as a defendant and/or to add WVM as a party plaintiff at this stage. Including these allegations for a valid purpose does not violate the Rule 8 requirement that Wyndham include a "short and plain" statement of its claims.

Certainly, the proposed amendments are lengthy – the Proposed SAC is 58 pages long and contains 314 numbered paragraphs. Be that as it may, Wyndham's Proposed SAC details a complex conspiracy involving multiple companies and individuals, with respect to which it attempts to provide sufficient detail in support of its claims. With the benefit of discovery, Wyndham now alleges that the conspiracy is broader than it originally believed, involving, in addition to the defendants identified in the original Complaint, two individuals who owned and/or operated Superior (Garrett and Franklin) and one individual (Earle) and two companies he owns and/or operates. The proposed amendments include significantly more specific details about the nature of the alleged conspiracy, including specific alleged acts by particular defendants and the proposed additional defendants – including, in many instances, dates, locations, the general content of the certain representations and/or communications. (*See, e.g.*, Proposed SAC ¶¶ 71-76, 121-133, 149, 175, 179, 181, and 187). The proposed amendments also include tailored sections relating specifically to the proposed additional defendants, such as 13 paragraphs concerning Earle's participation in the alleged scam via Smokey Mountain and Mountain Getaways. (*See id.* ¶ 139-151). The court finds that the proposed amendments comply with Rule 8, because they provide the defendants fair notice of the claims against them sufficient to file a responsive pleading.

### C.     Rule 9(b) Challenges

The defendants also argue that, in violation of Rule 9(b), Wyndham (1) has not alleged sufficient details to establish that fraud actually occurred and/or (2) with respect to the RICO claims, Wyndham has not adequately pleaded details concerning the predicate acts of mail and wire fraud.

The court finds both arguments to be without merit. First, the Proposed SAC contains many references to particular instances in which one or more defendants engaged in allegedly fraudulent conduct, such as (1) the specific time frame and days on which the Spigners made false representations to Wyndham owners about the nature of the Wyndham assets, (2) instances in which the Consultant Group, signing on behalf of Superior, convinced owners to "transfer" their deeds and submitted the transfer authorization documents to Superior with the understanding that Superior would not actually conduct a legitimate transfer; (3) instances in which Superior communicated with Wyndham owners to facilitate the sham transfers; (4) instances in which Earle, Mountain Getaways, and/or Smokey Mountain Getaways submitted false transfer documentation to Wyndham; and (5) instances in which Superior submitted false transfer documentation to Wyndham. In most instances, these allegations specify the date of the communication, how it was fraudulent, who sent it, who received it, and how it facilitated the scam. These allegations of fraud are generally sufficient under Rule 9(b).

Second, the Proposed SAC sufficiently alleges potential predicate RICO offenses. To establish a RICO claim, a plaintiff must, *inter alia*, establish a "pattern of racketeering activity," which requires at least two acts of racketeering activity, commonly referred to as "predicate offenses." *See Brown v. Cassens Transport Co.*, 546 F.3d 347, 352 (6th Cir. 2008); *Haroco v. Am. Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 386 (7th Cir. 1984). The predicate

offenses must be indictable federal offenses listed in 18 U.S.C. § 1961(1)(b). *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). Mail fraud and wire fraud are federal offenses that can constitute predicate offenses for a civil RICO claim. *In re ClassicStar Mare Lease* Litig., — F.3d —, 2013 WL 3746220, at *7 (6th Cir. Jul. 18, 2013); *Jackson v. Sedgwick Claims Mgm't Servs., Inc.*, 699 F.3d 466, 475 (6th Cir. 2012); *see* 18 U.S.C. § 1961(1)(B). "Because RICO claims require proof of mail or wire fraud as an element, the plaintiffs must also satisfy the heightened particularity requirements of [Rule 9(b)] with respect to the elements of fraud." *Sedgwick*, 699 F.3d at 476.

Here, Wyndham has alleged a host of instances in which one or more defendants, in furtherance of the alleged conspiracy, engaged in mail fraud using the United States Mail, Fed Ex and/or UPS (*see, e.g.*, Proposed SAC ¶¶ 175 (communications between Superior/Garrett/Franklin and Wyndham) and 187 (communications between Superior and Wyndham owners)) and/or wire fraud using email, facsimile, and/or telephone communications (*see, e.g.*, *id.* ¶¶ 179 (email and/or facsimile communications between the Consultant Group and Superior); 181 (email and facsimile communications to and from Superior and Smokey Mountain)). These allegations are sufficient to satisfy the Rule 9(b) particularity requirements with respect to the alleged RICO predicate offenses. Therefore, the court finds that Wyndham's amended RICO claims are not futile.

**V.** **<u>Narrowed Claims Against Simerka</u>**

In the Proposed SAC, Wyndham restricts its claims against Simerka to claims relating to breach of his employment agreement. Wyndham now alleges that Simerka solicited clients away from Wyndham owners in connection with other companies (including the "VO Group") as well as the Consultant Group. Apparently, Wyndham has brought a separate case in Tennessee state

15

court against the VO Group and other entities who allegedly conducted a similar but unrelated scam. Here, the defendants argue that, if Wyndham is pursuing Simerka for his actions while employed by the VO Group, that conduct is properly part of the state court lawsuit, not this case. The defendants do not appear to oppose Wyndham's related request to drop certain claims against Simerka.

The court finds that the Proposed SAC sufficiently alleges a connection between Simerka and the conspiracy at issue here. However, the court expects that Wyndham will limit discovery of Simerka to allegations pertinent to its claims against him in this lawsuit. Subject to that caveat, the court finds that the proposed amendments relative to Simerka are proper.

## VI. Amended RICO Case Statement

Given the substantial changes to the Complaint, including the addition of five new parties, the court will order Wyndham to file a Supplemental RICO Case Statement, which will further clarify Wyndham's amended RICO claims.

## CONCLUSION

For the reasons stated herein, Wyndham's Second Motion for Leave to Amend will be granted and Wyndham's First Motion for Leave to Amend will be denied as moot. Wyndham will be permitted to a file an Amended Complaint in the same form as the Proposed SAC. Wyndham will also be ordered to file a supplemental RICO Case Statement.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge