| | | |
|---|---|---|
| **WYNDHAM VACATION RESORTS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:12-cv-00096** |
| | ) | **Judge Aleta A. Trauger** |
| **v.** | ) | **Magistrate Judge Brown** |
| | ) | |
| **THE CONSULTANT GROUP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

On March 18, 2015, plaintiff Wyndham Vacation Resorts, Inc. ("Wyndham") filed a

sealed Motion to Disqualify McKellar Hyde from representing defendants Michael Dean

Spigner, Ray Spigner, and The Consultant Group (collectively, the "Spigner Defendants").

(Docket No. 382.)  On June 10, 2015, after extensive briefing and an evidentiary hearing, the

Magistrate Judge issued an Order that disqualified McKellar Hyde from representing the

customers of a third-party entity owned by Michael Dean Spigner (neither that entity nor its

customers are parties to this case).  (Docket No. 461.)  The Spigner Defendants and their

counsel, McKellar Hyde, PLC ("McKellar Hyde"), whose own interests are implicated, have

filed a Motion for Review of the Magistrate Judge's Order (Docket No. 517), to which

Wyndham filed a Response in opposition (Docket No. 536), the Spigner Defendants and

McKellar Hyde filed a Reply (Docket No. 548), and Wyndham filed a Sur-Reply (Docket No.

557).

For the reasons stated herein, the Motion for Review will be granted and the Magistrate

Judge's Order will be reversed.

## BACKGROUND

The court has detailed the allegations and made findings in this case in previous opinions and rulings, familiarity with which is assumed. (Docket Nos. 80, 211, and 215.)[1] Briefly, Michael Dean Spigner ("Dean Spigner") and his father, Ray Spigner, both originally worked for Wyndham. On June 3, 2012, Dean Spigner left Wyndham and, along with his father and other former Wyndham employees, immediately formed an unregistered partnership called The Consultant Group ("TCG"). The Spigner Defendants and Superior Vacations, Inc. d/b/a Superior Timeshare Closing ("Superior") began soliciting Wyndham timeshare owners by conducting high-pressure sales presentations to convince Wyndham owners that their deeds were worthless, the maintenance fees were exorbitant, and the timeshares would be a financial burden to them and their children. To resolve this issue, they offered, for substantial fees, (1) to assist the timeshare owners in a guaranteed divestment of their timeshare interest, and (2) to replace those timeshare interests with "Plantation Resort Destinations" vacation club packages (not timeshares) that would provide the same benefits for less money. Originally, TCG performed both services: acting as an "authorized agent" for Superior, it charged customers to purportedly have Superior transfer their timeshare deeds to third-party purchasers; acting under the "d/b/a" Plantation Resort Destinations, it also signed up customers for the replacement vacation club package (via a third-party company called "RSI"). For ease of reference, the court will refer to this entire business as the "TCG/Superior business model."

On September 28, 2012 (just a few months after the Spigner Defendants opened shop), Wyndham filed this lawsuit, which aimed to shut down the TCG/Superior business model. (Docket No. 1.) Wyndham alleged that the Spigner Defendants' sales presentations contained

---

[1] The court's background summary is drawn from the entire record in this case, including the record developed before the Magistrate Judge in connection with the Motion to Disqualify.

false and misleading representations about Wyndham's business and the nature of the timeshare interests, that the Spigners were working with Superior to facilitate fraudulent transactions to fictitious "sham purchasers" who inevitably defaulted on their maintenance fee obligations, and that Dean Spigner was violating the non-competition and non-solicitation terms of his Salesperson Agreement with Wyndham. Wyndham later filed an Amended Complaint, which remains the operative pleading in this case. (Docket No. 84.) Through June 2, 2014, both the Spigner Defendants and Superior were represented by attorney Greg Oakley, formerly of the now-dissolved law firm of DHPM, P.C., and more recently of the law firm of Oakley Rieger PLLC.

In April 2013, Wyndham deposed Dan Garrett and Christal Franklin, two principals of Superior (collectively, the "Superior Defendants"). Garrett all but admitted to facilitating fraudulent timeshare transfers to non-consenting third-party "purchasers." Dean Spigner claims that he was not aware of Superior's fraud before Garrett's deposition.

Dean Spigner has testified that, unbeknownst to Wyndham, he switched business models following the April 2013 Garrett deposition. Although the record concerning this new business model is only just developing, it appears that Dean Spigner registered a new company called "Vacation Transfers Unlimited, LLC" ("VTU") in March 2013, and claims to be the company's sole owner.[2] As the court understands it, under this new business model, the Spigners continued to target Wyndham timeshare owners through a sales presentation and continued to market the RSI vacation club package through TCG. Meanwhile, through the newly incorporated VTU,

---

[2] Curiously, according to the Tennessee Secretary of State website, VTU was registered on March 12, 2013, approximately one month *before* the Garrett deposition on April 15, 2013. Spigner also testified that he formed VTU in March or April *2014*, although he may just have been mistaken in his testimony. These are legitimate subjects for further inquiry.

they marketed a new service: hiring an attorney to send a "demand to terminate timeshare" letter

to Wyndham.  Thus, instead of seeking to process (fraudulent) third party transfers, Dean

Spigner claims that he changed his business model to utilize a legitimate, non-fraudulent means

of divesting the customers' timeshare interests.  For the next few years, he contracted with three

law firms to send demand letters on behalf of VTU clients: Oakley Rieger, Allyance Law, and

(beginning in Summer 2014) McKellar Hyde.  Assuming for the sake of argument that VTU,

TCG, and the Spigners are not *alter egos* of each other, it appears that VTU and TCG (Dean

Spigner, in reality) targeted timeshare customers jointly at the same sales presentation, but

entered into separate contracts with customers for their respective services: customers could

contract with VTU to hire an attorney or with TCG to purchase a vacation club package, or often

both.[3]  The court will refer to this modified business model as the "TCG/VTU business model."

Meanwhile, proceedings in this lawsuit continued relative to the TCG/Superior business

model at issue.  On May 15, 2014, the court issued a Preliminary Injunction, which essentially

forbade the Spigners and the Superior Defendants from continuing to facilitate fraudulent

transactions and from holding themselves out as Wyndham affiliates – in other words, to cease

the TCG/Superior business model.  At that time, neither the court nor Wyndham was aware of

the TCG/VTU business model, even though it may have been in effect for nearly a year by that

point.[4]

---

[3] Curiously, although the name of the company is "Vacation *Transfers* Unlimited," Spigner
claims that the company did *not* process deed transfers.

[4] Incidentally, in response to a Motion for Contempt filed by Wyndham, the court found that the
Superior Defendants violated the injunction by processing several deeds as part of a continuation
of the TCG/Superior business model.  (Docket No. 530.)  The court also found that Wyndham
had not met its burden to show similar violations by the Spigners.

After the court issued the Preliminary Injunction, Greg Oakley withdrew as counsel for the Superior Defendants and the Spigner Defendants, citing an unspecified conflict.[5] According to affidavits from Dean Spigner and attorney Lyndsey Smith Hyde, in the summer of 2014, the Spigner Defendants retained McKellar Hyde as their attorneys in this lawsuit *and* went into business with them as part of the TCG/VTU business model. Dean Spigner avers that VTU entered an "oral contract" with McKellar Hyde, whereby McKellar Hyde received either $500 or $1,000 per customer to represent VTU customers by sending demand letters to Wyndham (and other timeshare developers) in an effort to void the timeshare contracts. VTU charged customers at least $2,000 for this service and kept the balance of funds not paid to McKellar Hyde.[6] Without disclosing VTU's existence in written correspondence, McKellar Hyde sent scores of "cease and desist" and "demand to terminate" letters to Wyndham on behalf of VTU customers from at least September 23, 2014 forward. From the face of these letters, Wyndham had no way of discerning the Spigners' involvement. In this lawsuit, McKellar Hyde attorneys filed Notices of Apperance as counsel for the Spigner Defendants on June 17 and July 8, 2015. (Docket Nos. 236 and 247.)

Since McKellar Hyde appeared in this case, the parties have been engaged in repeated, vitriolic disputes about discovery. In most relevant part, while represented by McKellar Hyde,

---

[5] Oakley Rieger was involved in writing demand letters for VTU as part of the TCG/VTU business model. In a recent affidavit, however, he avers that the cited conflict had nothing to do with the TCG/VTU business model, of which his firm was a part.

[6] Meanwhile, TCG charged customers inconsistent rates – between $3,000 and $10,000 – for the same RSI "Plantation Resort Destinations" vacation club packages. Despite the variability in price, it appears that the underlying vacation club package was identical in each TCG contract. The record is also somewhat muddled as to what role VTU played relative to VTU customers, including whether VTU handled "intake" for McKellar Hyde.

the Spigner Defendants dragged their feet (at best) in responding to discovery served by Wyndham. Among other disputed items, TCG belatedly produced a list of its customers in March 2015.[7] When Wyndham compared the list of TCG customers to the names of McKellar Hyde clients on recent demand letters, Wyndham immediately realized that many of McKellar Hyde's clients were actually TCG customers. As the court understands it, Wyndham was not aware of VTU or its specific business at that time, although it was aware that the Spigner Defendants may have been utilizing other business names (other than "The Consultant Group") to target its timeshare owners.

On March 18, 2015, perhaps in a "shoot first and ask questions later" approach, Wyndham filed the instant Motion to Disqualify (Docket No. 382), contending that McKellar Hyde should be disqualified from representing both the Spigner Defendants and their "victims" (the timeshare owners) at the same time. Wyndham alleged that McKellar Hyde was representing these customers in an effort to help the Spigner Defendants "clear" deeds that were in the TCG/Superior pipeline when the court issued the Preliminary Injunction against the TCG/Superior business model in May 2014. Wyndham's motion did not cite the violation of a particular ethical rule, nor did it articulate any form of prejudice other than an "impediment" to its ability to conduct "informal discovery" of "material witnesses" to the case.[8] On April 15, 2015, McKellar Hyde filed a Response in opposition (Docket No. 411) with accompanying

---

[7] Wyndham has filed a Motion for Contempt related to whether the Spigner Defendants violated the Magistrate Judge's February 20 and March 30 discovery orders. (Docket No. 508.) The Motion for Contempt is pending before the Magistrate Judge.

[8] Wyndham later filed additional evidence in support of the motion, including an attorney declaration, deposition transcript excerpts, copies of the TCG vacation club agreements, and copies of McKellar Hyde's letters to Wyndham. (Docket Nos. 387, 405, and 408.)

declarations from Greg Oakley (the Spigner Defendants' former counsel), Lyndsey Smith Hyde (the Spigner Defendants' current counsel), and Shelby Webb (a paralegal shared by Oakley Rieger and McKellar Hyde). The Hyde Declaration provided a limited explanation of VTU's model, made no reference to the business arrangement between VTU and McKellar Hyde (giving the impression that McKellar Hyde simply accepted referrals from VTU), and represented that none of the individuals that McKellar Hyde had represented were TCG customers. The Webb Declaration revealed that Oakley and McKellar Hyde share Webb's paralegal services, that Webb regularly performed work related to VTU-referred clients, and that Webb had not performed substantive work for the Spigner Defendants in this lawsuit after Oakley withdrew.

In its Reply, Wyndham presented evidence showing that, notwithstanding Ms. Hyde's declaration, McKellar Hyde in fact had represented numerous customers of TCG. At 6:49 p.m. on May 26, 2015 (the night before the evidentiary hearing on the Motion to Disqualify), McKellar Hyde filed the Supplemental Declaration of Lyndsey Smith Hyde, in which Hyde conceded that her previous representation was "not completely accurate" and that she had, in fact, represented some TCG clients. She averred that she received referrals from VTU (not TCG) and did not realize at the time of her initial affidavit that clients referred by VTU were sometimes also customers of TCG.

On May 27, 2015, Magistrate Judge Brown held a hearing, a transcript of which is in the record. (Docket No. 473.) Wyndham introduced several exhibits into evidence, but it presented no witnesses. McKellar Hyde introduced exhibits, presented fact testimony from Dean Spigner, and presented expert testimony on the ethical issues from William Tripp Hunt, III, former Ethics and Disciplinary Counsel for the Tennessee Board of Professional Responsibility (the "BPR"). Among the exhibits, McKellar Hyde filed a copy of its form retention agreement with VTU-

referred customers for review *in camera*. Dean Spigner testified concerning VTU's business

model. Hunt testified that he perceived no conflict of interest that required disqualification.

Nevertheless, Hunt admitted that McKellar Hyde had retained him the afternoon before the

hearing, leaving him limited time to prepare, and it became clear that he had reviewed only a

truncated record before testifying. During the hearing, the Magistrate Judge expressed some

confusion concerning the nature of the entities involved (TCG, VTU, Superior, and the Spigners)

and their interrelationships. Over objections from McKellar Hyde as to relevance, the Magistrate

Judge heard testimony from Hunt concerning whether the VTU arrangement violated ethical

rules relating to fee splitting and client solicitation. As to those two ethical concerns, Hunt

testified that he could not render a confident opinion without seeing the terms of the agreement

between McKellar Hyde and VTU.

Following the hearing, both Dean Spigner and Lindsey Smith Hyde submitted affidavits

that provided additional testimony concerning VTU, TCG, McKellar Hyde, and TCG/VTU

customers. (Docket Nos. 462 and 462.)[9] In most relevant part, Ms. Hyde and Dean Spigner aver

(for the first time) that the VTU-McKellar Hyde agreement was oral, and Hyde avers that she

spoke about this issue with a high-ranking BPR official, who told her that he saw no problem

with McKellar Hyde's oral contract with VTU.

On June 10, 2015, the Magistrate Judge issued a four-page Order that granted in part and

denied in part the Motion to Disqualify. (Docket No. 461.) Without citing the applicable legal

---

[9] Both declarations are dated June 3, 2015. The declarations originally were sent directly to the
Magistrate Judge for review *in camera* and were not docketed. On June 10, 2015, in connection
with his ruling on the motion, the Magistrate Judge ordered that the declarations be docketed
under seal. On June 24, 2015, the court granted Wyndham's motion to access copies of the
declarations and the McKellar Hyde limited engagement letter. (Docket No. 504.)

8

standard, the Magistrate Judge found that McKellar Hyde "has a conflict" in representing both

VTU customers and the Spigner Defendants at the same time. The Order did not specifically

address a conflict relative to TCG. In reaching this decision, the Magistrate Judge discounted

Hunt's opinion testimony, believing that Hunt had testified based on the incorrect assumption

that all of McKellar's Hyde work for the individual clients had already concluded, and that Hunt

had only a limited understanding of the case record. The Order directed McKellar Hyde to

terminate its relationship with current clients of VTU, although its implementation was stayed.[10]

On June 29, 2015, the Spigner Defendants and McKellar Hyde filed the instant Motion

for Review (Docket No. 517), in support of which they filed the Declaration of William Walter

Hunt, III (Docket No. 519) and a Notice of Filing that attaches unpublished cases (Docket No.

528). The Hunt Declaration recites assumed facts concerning the business operations of TCG

and VTU and the relationships among TCG, VTU, VTU's customers, and McKellar Hyde. In

---

[10] The Magistrate Judge's Order precipitated a flurry of activity. In response to the
Order, McKellar Hyde petitioned for relief on the basis that it had 51 individual clients with
pending claims against Wyndham. McKellar Hyde filed an Emergency Motion to Stay (Docket
No. 465), which the district court initially set for hearing on June 24, 2015 (Docket No. 466), and
to which Wyndham filed a Response in opposition (Docket No. 472). On June 15, 2015,
McKellar Hyde petitioned the Magistrate Judge by email for interim relief (Docket No. 492), and
the Magistrate Judge held an in-court hearing on June 16, 2015 (Docket Nos. 469), a transcript of
which is in the record (Docket No. 535). On June 17, 2015, the Magistrate Judge issued an
Order that stayed the effect of his June 10, 2015 Order, pending the district court's hearing on
the Emergency Motion for Stay (Docket No. 476). On June 18, 2015, apparently in response to
further communications from McKellar Hyde, Magistrate Judge Brown issued an Order staying
release of McKellar Hyde's engagement letter. (Docket No. 479.) In response to a Motion to
Clarify filed by McKellar Hyde and the Spigner Defendants (Docket No. 493), the district court
reset the briefing schedule and set a tentative hearing date (Docket No. 494). On June 24, 2015,
Wyndham filed an Emergency Motion to Release Documents (Docket No. 503), which asked the
court to disclose the June 3, 2015 Spigner Declaration, the June 3, 2015 Hyde Declaration, and
the McKellar Hyde engagement letter. The court granted the motion, reset the briefing schedule,
and reset the tentative hearing date. (Docket No. 504.) On July 2, 2015, as a housekeeping
matter, the court denied the Emergency Motion for Stay as moot. (Docket No. 532.)

substance, Hunt avers that McKellar Hyde's representation of VTU customers does not create a conflict with McKellar Hyde's representation of VTU because their interests are not "materially adverse." Hunt also avers that Tennessee Rule of Professional Conduct ("RPC") 1.7(b) permits an attorney to continue the representation despite a conflict, provided that the attorney "reasonably believes" that she can represent the client competently, that no law prohibits the representation, and that the clients do not have claims against each other in the same proceeding – all conditions that Hunt believes are satisfied here. Furthermore, Hunt contends that, under RPC 1.7(c), even if there were a conflict, it could be waived. Hunt also avers that McKellar Hyde clients whose timeshare contracts were terminated constitute "former clients" subject to RPC 1.9(a), under which a conflict exists only if the current client is "materially adverse" to the interest of a former client in the same or a substantially related matter – conditions not present here.

On July 6, 2015, Wyndham filed a Response to the Motion for Review. (Docket No. 536.) After the court issued an Order indicating that it would rule on the papers (Docket No. 539), McKellar Hyde filed a Reply (Docket No. 548), and Wyndham filed a Sur-Reply (Docket No. 557).[11]

## RULE 72 STANDARD

---

[11] As with many disputes in this litigation, Wyndham continues to introduce extraneous matter in its submissions, to disparage opposing counsel (rightly or wrongly), and to make citations to the record that are arguably misleading. Wyndham should take more care to limit its submissions to the matter at hand, knowing that the court takes unsupported extraneous information with a grain of salt. As to the parties' dispute about whether counsel for Wyndham made a "blatant lie" to Magistrate Judge Brown, the court will simply state that counsel for Wyndham should be more circumspect in its rhetoric.

Under Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b), a district court may modify or set aside a Magistrate Judge's ruling on non-dispositive preliminary matters only where that ruling is "clearly erroneous or contrary to law." This is a "limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993). A ruling is clearly erroneous "where it is against the clear weight of the evidence or where the court is of the definite and firm conviction that a mistake has been made." *Galbraith v. N. Telecom, Inc.*, 944 F.2d 275, 281 (6th Cir. 1991) (internal citations omitted). The test is "not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one the reviewing court would draw. Rather the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of the evidence is a reasonable one." *Heights Cmt'y Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

## ANALYSIS

### I. Motion to Disqualify Standard

Although a district court possesses the inherent authority to disqualify an attorney in order to aid the fair representation of justice, it is not to use this remedy lightly; that is, courts must remain sensitive to the parties' choice of counsel and weigh that interest against the public's interest in fair judicial process. *See Manning v. Warning, Cox, James, Sklar, & Allen*, 849 F.2d 222, 224 (6th Cir. 1988); *Cavender v. U.S. Express Enters., Inc.*, 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002) (describing motions to disqualify as being "very sensitive" and as requiring the court to "exercise judgment with an eye toward upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorney of their choosing, . . . and the overriding societal interests in the integrity of the judicial

11

process.")  The standard for professional conduct of lawyers practicing before this court

incorporates the Tennessee Rules of Professional Conduct.  M.D. Tenn. Local Rule 83.01(e)(4).

To prevail on a motion to disqualify, the movant bears "the burden of proving that

opposing counsel should be disqualified." *McKinney v. McMeans*, 147 F. Supp. 2d 898, 900

(W.D. Tenn. 2001) (citing *Bartech Indus. v. Int'l Baking Co.*, 910 F. Supp. 388, 392 (E.D. Tenn.

1996)).

## II. <u>Application</u>

The court sympathizes with the Magistrate Judge's impression, expressed at the

evidentiary hearing, that something about the Spigners' current TCG/VTU business model does

not "pass the smell test."  As the court understands it, McKellar Hyde went into business with its

own clients during the course of this litigation – perhaps from its outset – in a business model

designed to woo customers away from Wyndham for profit.  The evidence indicates that Dean

Spigner at some point modified his business model in such a way that it (1) differed from the

TCG/Superior model directly at issue in this lawsuit, (2) omitted evidence of his involvement in

peeling business away from Wyndham, and (3) continued a significant revenue stream premised

on targeting Wyndham timeshare owners.  Furthermore, neither McKellar Hyde nor Dean

Spigner was entirely forthcoming in disclosing and describing VTU's business model and its

relationship to the Spigners, choosing to disclose the nature of that business model in bits and

pieces, in ways that (at least initially) attempted to obscure the depth of their business

relationship.

The court also recognizes why Wyndham's hackles were raised upon discovering that

McKellar Hyde was representing TCG clients.  Only after repeated badgering was Wyndham

able to obtain the information necessary to make that connection, and even then, Wyndham had

12

only a vague understanding as to why McKellar Hyde was sending demand letters on behalf of

TCG clients. Although Dean Spigner maintains that he (and his father), TCG, and VTU are

distinct entities, there may be legitimate grounds to question whether these entities are *alter egos*

of one another. Dean Spigner continues to operate through multiple companies and under

multiple names.

There does seem to be an inherent ethical issue in McKellar Hyde's procurement, via

VTU, of clients in return for a fixed fee. As the court understands it, these clients are not

reaching out to McKellar Hyde in the first instance; instead, the Spigners are *convincing*

customers that they should divest their timeshare in favor of a substitute vacation club, signing

the customers up for a substantial fee, and *assigning* McKellar Hyde as attorneys to them. There

is no indication that McKellar Hyde has informed its clients of the allegations against the

Spigners in this lawsuit, in which Wyndham essentially alleges that the Spigners are fraudsters.[12]

Although these are legitimate concerns, they do not establish that McKellar Hyde should

be disqualified from representing VTU's clients. The Magistrate Judge's Order does not recite

the legal standard for disqualification or state where the burden lies, nor does the Order indicate

that the Magistrate Judge applied the standard and the burden. Furthermore, the Magistrate

Judge does not explain what authority the court has to disqualify an attorney from representing

non-parties. These considerations alone constitute independent grounds for reversal.

---

[12] Although not argued by Wyndham, this court is also concerned that McKellar Hyde's direct
*business interest* in this litigation could have compromised its integrity as an advocate for the
Spigners. McKellar Hyde stood to benefit from their clients' refusal to produce a customer list
and from withholding information about the VTU business model. Mindful that correlation does
not equal causation, the court will not pursue this concern at this time.

The Magistrate Judge's Order was clearly erroneous for additional reasons. With respect to Hunt's testimony, the Magistrate Judge should not have discounted Hunt on the grounds that he did not know that McKellar Hyde had current clients. Although McKellar Hyde could have been clearer in its presentation as to the distinction between past and present conflicts, the record contains references to current conflicts of interest, and Hunt testified that he perceived no conflicts relative both to current and former clients of McKellar Hyde. Regardless, even if the Magistrate Judge fairly interpreted McKellar Hyde's representations at the hearing, the court on review also has the benefit of Hunt's supplemental affidavit, in which Hunt explicitly opines that there are no conflicts relative to current or former McKellar Hyde clients because VTU and its customers are not adverse to one another. Moreover, although the Magistrate Judge legitimately questioned whether to place much stock in Hunt's conclusions at the time, the opinions in Hunt's post-Order declaration are based on a thorough understanding of the record that he lacked at the hearing.[13] Although it would have been better practice for McKellar Hyde to have retained Hunt on more than 24 hours' notice and to have better prepared him to testify, the stakes for non-parties who were not aware of these proceedings (*i.e.*, McKellar Hyde's VTU-referred clients) are too high for the court to ignore the declaration on procedural grounds.[14] In his affidavit,

---

[13] Indeed, had the opinions in Hunt's declaration been presented with the same degree of preparedness and clarity at the evidentiary hearing, the Magistrate Judge may have denied the Motion to Disqualify in the first place.

[14] In the "Background" section of its brief, Wyndham asserts, without reference to legal authority, that the court "should not" consider the Hunt Declaration because it was not presented to the Magistrate Judge. In *Banner v. City of Flint*, 99 F. App'x 29, 35 (6th Cir. 2004), the Sixth Circuit held that the district court permissibly considered additional evidence and argument on review of a Magistrate Judge's non-dispositive findings concerning alleged ethical violations by counsel. It observed that, "although the Federal Magistrate's Act does not expressly allow the district to take new evidence in non-dispositive matters referred to a magistrate judge, 'it is not

Hunt cogently explains that there are no current conflicts under RPC 1.7 or conflicts relative to

former clients under RPC 1.9(a), and that, even if there were a conflict, it could be waived.

Furthermore, the Magistrate Judge's Order does not distinguish between the

TCG/Superior model and the TCG/VTU model.  Although the record is limited concerning this

the TCG/VTU business model, it appears to bear some similarities to the TCG/Superior model

(targeting timeshare owners and convincing them to relinquish their timeshare asset or to

purchase a substitute vacation club package), but it does *not* involve the procurement of

fraudulent deed transfers and the associated transfer of fraudulent paperwork to Wyndham.[15]

This distinction is important: Wyndham's Amended Complaint targets the TCG/Superior model,

not the TCG/VTU model, and the Preliminary Injunction (which Wyndham drafted and

proposed) shut down only the TCG/Superior model.  Wyndham seems to have fudged this

relevant distinction in its representations to the Magistrate Judge, which may explain the

Magistrate Judge's conflation of the two business models in reaching his decision.  At any rate,

the difference between these two business models means that, in order to disqualify McKellar

Hyde because of its representation of TCG/VTU customers, the court must explain why

information relevant to the TCG/VTU business model is relevant to the TCG/Superior business

---

clearly forbidden either if there is good cause for revisiting the matter.'" *Id.* (quoting *Conetta v. National Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (1st Cir. 2001)).  Here, although the court generally would not consider additional evidence upon review, the court finds good cause to do so in this instance.  The court reiterates that, even without consideration of the Hunt Declaration, it finds that the Order subject to review was clearly erroneous based on the information presented to the Magistrate Judge.

[15] The court bases this statement on the existing record, which contains no evidence that VTU is involved in fraudulent transfers.

and would lead to an inherent conflict. The Magistrate Judge's Order does not take these considerations into account, which also justifies reversal.

Finally, Wyndham has not explained why "impeding" its purported "efforts to conduct informal" discovery of TCG/VTU customers is a sufficient consideration to justify disqualification. Wyndham has shown, at best, only a speculative and incidental impact on its discovery efforts and the potential trial of this case.

In sum, the burden was on Wyndham to show that disqualification is warranted. It did not meet this burden before the Magistrate Judge, and it has not done so now. For the reasons explained herein, the court finds that the Magistrate Judge's Order was clearly erroneous and will be reversed.

On a final note, as to the parties' dispute concerning fee-splitting and solicitation, the court finds that discussion to be irrelevant to the issue of disqualification.[16] If Wyndham sincerely believes that McKellar Hyde has violated Rule 5 (relating to fee splitting) or Rule 7 (relating to attorney advertising or solicitation), it can raise that issue with the BPR. The same goes for McKellar Hyde's suggestion that Wyndham's counsel, King & Ballow, has violated Rule 1.5 by overbilling Wyndham.

### CONCLUSION

---

[16] Although the court finds that reversal is compelled here, the court's conclusion should not be construed as an implicit endorsement of the Spigner Defendants' current business model or as a finding that McKellar Hyde's arrangement with VTU complies with ethical rules related to fee-splitting and solicitation. There is a disconnect between Dean Spigner's testimony and the actual terms of his VTU contracts with customers, and this court is unaware of any other instance in which defense counsel has entered into business with its own clients in the same industry that is the subject of the pending litigation. Be that as it may, it is not necessary for the court to follow these issues down the rabbit hole, as they were not addressed in the Magistrate Judge's Order and are immaterial to the matter of attorney disqualification raised here.

For the reasons stated herein, the Motion for Review will be granted and the Magistrate

Judge's June 10, 2015 Order will be reversed.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge